# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL MOLOCK, *et al.*,　　　　　　　 :

　　　　Plaintiffs,　　　　　　　　　　　 :

　　v.　　　　　　　　　　　　　　　　 :

　　　　　　　　　　　　　　　　　　　　 **Case No. 1:16-cv-02483-APM**
WHOLE FOODS MARKET, INC., and　　 :　**Judge Amit P. Mehta**
WHOLE FOODS MARKET GROUP, INC.,
　　　　　　　　　　　　　　　　　　 :

　　　　Defendants.　　　　　　　　　　 :

　　　　　　　　　　　　　　　　　　　　 :

## SECOND AMENDED
## CLASS ACTION COMPLAINT AND JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiffs, individually and on behalf of all others similarly situated, allege for their Second Amended Complaint as follows:

## PRELIMINARY STATEMENT

1.　　Whole Foods engaged in a nation-wide scheme to strip hard-working employees of earned bonuses in order to maximize their own profit. Whole Foods stole employee bonuses as part of its "Gainsharing" profit-sharing program through a corporate practice known as "shifting labor costs." Whole Foods has publicly admitted that it has failed to pay employee bonuses earned under the Gainsharing program. Upon information and belief, Whole Foods has falsely understated, however, the number of stores as to which this unlawful practice occurred, suggesting that it only occurred in nine stores. Accordingly, Plaintiffs bring this class action lawsuit on behalf of themselves and all others similarly situated to recover all wages owed to employees under the Gainsharing program, plus interest, penalties, and all other compensatory and punitive damages available to them under applicable law.

**JURISDICTION AND VENUE**

2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C §

1332, as this matter involves a controversy between citizens of different states and the matter in

controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of

interests and costs. This Court also has subject matter jurisdiction pursuant to the provisions of

28 U.S.C. § 1332(d), as the amount in controversy exceeds the value of $5,000,000.00, this is a

class action, and one or more Plaintiffs is a citizen of a state different from the state of

citizenship of one or more of the defendants.

3.      This Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P.

4(k)(1) and D.C. Code § 13-423(a)(1)-(4).

4.      Venue is proper in this Court pursuant to the provisions of 28 U.S.C. §

1391(b)(2), as acts and/or omissions alleged in this Complaint occurred in the District of

Columbia. Moreover, the Defendants are found, reside, or transact business in the District of

Columbia.

**PARTIES AND RELEVANT PERSONS**

5.      Plaintiff Michael Molock is a resident of the District of Columbia. At all times

relevant, Mr. Molock and all others similarly situated were employees as defined by D.C. Code

§ 32-1301(2).

6.      Plaintiff Randal Kuczor is a resident of the District of Columbia. At all times

relevant, Mr. Kuczor and all others similarly situated were employees as defined by D.C. Code

§ 32-1301(2).

7.      Plaintiff Carl Bowens is a resident of the State of Maryland. At all times relevant,

Mr. Bowens and all others similarly situated were Defendants' employees.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

8.      Plaintiff Jose Fuentes is a resident of the State of Maryland. At all times relevant, Mr. Fuentes and all others similarly situated were Defendants' employees.

9.      Plaintiff Christopher Milner is a resident of the State of Georgia. At all times relevant, Mr. Milner and all others similarly situated were Defendants' employees.

10.     Plaintiff Jon Pace is a resident of the District of Columbia. At all times relevant, Mr. Pace and all others similarly situated were Defendants' employees.

11.     Plaintiff Sarah Strickland is a resident of the State of Oklahoma. At all times relevant, Ms. Strickland and all others similarly situated were Defendants' employees as defined by 40 Okl. St. § 165.1(2).

12.     Defendant Whole Foods Market, Inc. is a for-profit corporation formed and organized under the laws of the State of Texas with its principal place of business located at 550 Bowie Street, Austin, TX 78703. Defendant Whole Foods Market, Inc. owns and operates approximately 466 grocery stores in North America. At all times relevant, Defendant Whole Foods Market, Inc. conducted substantial business activities in the District of Columbia by operating several grocery stores in the District of Columbia. Upon information and belief, at all times relevant, Defendant Whole Foods Market, Inc. operated as part of a joint venture with Defendant Whole Foods Market Group, Inc. with the common purpose of maximizing profits. Each entity had an equal right to control the manner in which the joint venture operated. In addition, at all times relevant, Defendant Whole Foods Market Group, Inc. was the actual and/or apparent agent for the Whole Foods Market, Inc. All times relevant, Defendant Whole Foods Market, Inc. was an employer as defined by D.C. Code § 32-1301(1).

13.     Defendant Whole Foods Market Group, Inc. is a for-profit corporation formed and organized under the law of Delaware with its principal place of business located at 550

Bowie Street, Austin, TX 78703. Defendant Whole Foods Market Group, Inc. owns and operates approximately 466 grocery stores in North America. At all times relevant, Defendant Whole Foods Market Group, Inc. conducted substantial business activities in the District of Columbia by operating several grocery stores in the District of Columbia. Upon information and belief, Defendant Whole Foods Market Group, Inc. is a 100% wholly owned subsidiary of Defendant Whole Foods Market, Inc. All times relevant, Defendant Whole Foods Market Group, Inc. was an employer as defined by D.C. Code § 32-1301(1).

14.     As set forth herein, Defendants employed Plaintiffs, and Defendants are jointly and severally liable for Plaintiffs' damages.

## FACTS COMMON TO ALL COUNTS

### The Gainsharing Program: As Promised by Defendants

15.     At all relevant times, as part of the promised compensation package it promised to its employees, Whole Foods has maintained a "Gainsharing" profit-sharing program. Established in 1986 and in force at all Whole Foods stores nationwide, the Gainsharing program distributes automatic (non-discretionary) bonuses to employees who work in departments that come in under their labor budget relative to the department's sales (*i.e.*, generate a surplus). The Gainsharing program is designed to increase department productivity and revenue. If a department generates a surplus, the surplus is automatically distributed among the employees in that specific department as a bonus. Whole Foods touted the benefits of the Gainsharing program to potential hires and employees, and employees, including Plaintiffs, relied on this program being a material part of their compensation package in deciding to work at Whole Foods.

16.     As part of the Gainsharing program, for each department at a given store, Defendants pegged target labor costs to given dollar amounts of sales. If a department within a store came in under budget for its monthly sales, then that department's employees shared, as a bonus, the amount by which the department came in under budget. As part of the hiring and orientation process for new employees, Defendants provided Plaintiffs with the following (or similar) information regarding the operation of the Gainsharing program:







17.     Through their agents such as store managers, department team leaders, payroll benefits specialists, and others (*see infra*, ¶¶ 32-99), Defendants repeatedly described the gainsharing program to function in the same manner as depicted in the materials in ¶ 16.

### The Gainsharing Program: Defendants' Cost-Shifting Scheme

18.     Notwithstanding these representations, in reality, Defendants intentionally manipulated the program by illicitly engaging in a nationwide corporate practice of "shifting labor costs" in order to pad their profits. The unlawful practice would work as follows: if one department failed to operate within its budget (i.e., labor costs exceeded the target established by Defendants for the particular amount of sales dollars generated by the department), labor costs of the under-performing department were inappropriately shifted to one or more over-performing departments that had money left over in its budget. As a result, the bonuses earned

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

6

by the hard-working employees of the over-performing department(s) would be reduced, if not eliminated altogether, by the costs absorbed from the under-performing department(s).

19. By way of a hypothetical, assume a store had a Specialty Department and a Prepared Foods Department that each had a labor budget of $100,000 per month. Further assume that the Specialty Department underperformed by generating costs of $120,000 in the month and the Prepared Foods Department over-performed by generating $80,000 of costs in the month. In this hypothetical, under the "Gainsharing" program, a the $20,000 surplus generated by the Prepared Foods Department should be distributed to the employees of that department. In this example, however, pursuant to the unlawful corporate practice of "shifting labor costs," the $20,000 of excess costs incurred by the Specialty Department would be transferred to the Prepared Foods Department, wiping out the surplus and thereby robbing those in the Prepared Foods Department of the fruits of their labor.

20. The "shifting of labor costs" was effectuated by the Payroll/Benefits Specialists located in each Whole Foods Store. To "shift labor costs," the Payroll/Benefits Specialists manually altered the employee time records that were otherwise automatically recorded in the Kronos systems when the employees clocked in and clocked out. The manipulated data was then transmitted by the Payroll/Benefits Specialists directly to the Whole Foods Market Inc.'s corporate headquarters in Austin, Texas, to be processed as part of payroll. Upon information and belief, the altered data would be flagged and/or appear on an audit trail in the Kronos system. At all times, Defendants were aware of the practice of "shifting labor costs" through the use of the Kronos system.

21.     This illicit corporate practice of shifting labor costs was a decision authorized, made, and ratified at the executive level by Defendants, and it was designed to pad company profits by literally stealing the bonuses earned by Defendants' own employees.

22.     Whole Foods additionally avoided paying bonuses to its employees under the Gainsharing program by establishing "Fast Teams." "Fast Teams" were created in order to permit employees to float from one department to another for the purpose of helping departments out as needed. Although Defendants attempted to sell this concept of Fast Teams as a way of improving the service levels for all departments, Defendants used the "Fast Teams" system to undermined the Gainsharing program by shifting labor costs among departments without properly accounting for it. By not accurately recording the work of Fast Team members, Defendants further failed to appropriately administer bonuses under the Gainsharing program to its employees, including Plaintiffs as those similarly situated.

23.     Defendants used the Gainsharing program, among other things, as a tool to incentivize Plaintiffs to accept employment and to work hard to maximize profits. Despite promising Plaintiffs to pay them bonuses earned under the Gainsharing program, and contracting to do so, they induced Plaintiffs, and others similarly situated, into contracts that Defendants intended to breach throughout Plaintiffs' employment.

**Plaintiffs Earned Bonuses Under the Gainsharing Program;
Whole Foods Failed to Pay Them as Promised**

24.     As Defendants' employees (as set forth *supra*, ¶¶ 5-11), by "working very smart and creatively," Plaintiffs and the others in their respective departments increased sales while minimizing labor costs throughout their tenure as employees, entitling them to bonuses under the Gainsharing program.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

25.     However, by "shifting labor costs," Defendants altered their time records in such a way as to strip Plaintiffs, and the others in their respective departments, of their hard-earned bonuses, denying them the compensation they were justly owed.

### Whole Foods Has Admitted that It Failed to Pay Its Employees under the Gainsharing Program

26.     On or about December 13, 2016, Whole Foods admitted in a story published by the Associated Press that it had "fired nine store managers in the mid-Atlantic region for manipulating a bonus program to their benefit." Defendants found that the managers had "engaged in a policy infraction that allowed the managers to benefit from a profit-sharing program at the expense of store employees." The nine stores in which Whole Foods admitted that the employees had been deprived of their earned Gainsharing bonuses include, without limitation, the following Whole Foods stores: the store located at 1440 P Street, NW, Washington, D.C. (where Plaintiffs Molock, Kuczor, and Milner worked); the store located at 5269 River Road, Bethesda, MD (where Plaintiff Milner worked); the store located at 2700 Wilson Boulevard, Arlington, VA (where Plaintiffs Bowens and Pace worked); 11660 Plaza America Drive, Reston, VA (where Plaintiff Fuentes worked); and 10275 Little Patuxent Parkway, Columbia, MD (where Plaintiff Fuentes also worked). Furthermore, according to the store managers of these stores, during the tenure of their employment (which dates back to 1993 for at least one of the managers) it was Defendants' corporate practice to "shift labor costs" as part of the Gainsharing program, not only at the nine stores identified above, but nationwide.

27.     After the scandal worked its way into the public discourse, Defendants sent executives to the nine stores identified in the preceding paragraph, where the executives spoke to the store employees and expressly admitted to the illicit conduct.[1]

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

---

[1] All Plaintiffs presently employed at the nine stores heard the admissions of wrongdoing.

28.     After Defendants' cost-shifting scheme became public, Defendants have attempted to pay small sums to employees, including Plaintiffs presently employed at the nine stores, in an effort to buy peace.

### Defendants' Misleading Public Comments

29.     On or about December 15, 2016, Defendants stated to the Washington Post that the incident remained under investigation but that (1) the wage theft was isolated to nine of its 457 stores and (2) it was perpetrated exclusively by the nine store managers they fired. Both were misrepresentations designed to mislead Plaintiffs, other employees, and the public.

30.     Upon information and belief, Defendants grossly understated and misrepresented the number of stores involved. It is believed that this is a nation-wide practice, as evidenced in part by a lawsuit brought by the nine fired store managers against Whole Foods, blowing the whistle on the scope of the practice of wage theft by Whole Foods, which they specifically allege has been nationwide.[2]

31.     Contrary to Defendants' claim that the "shifting of labor costs" was limited exclusively to nine allegedly rogue store managers, quite the opposite is true. As alleged in the lawsuit filed by the store managers, the illicit practice was nationwide and existed for as long as they worked as managers (leadership roles) for Defendants. As further evidence of the misleading nature of Defendants' contention that the nine store managers were, alone, the wrongdoers, in April 2015, corporate leadership for Whole Foods explicitly instructed a store manager to illicitly shift labor costs from departments that were in deficit to other teams that had surpluses. Furthermore, all of the employee time records that were manipulated in the Kronos system were sent directly to the Whole Foods Market Inc.'s corporate headquarters in

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

---

[2] Plaintiffs incorporate by reference the pleadings filed by the store managers in their lawsuit, *Vasquez v. Whole Foods Market, Inc.*, 17-cv-00112-APM (D.D.C.).

Austin, Texas, to be processed as part of payroll. Executives knew of, and directed, the illicit

manipulation of employment records for at least twenty-three (23) years.

## FACTS SPECIFIC TO THE NAMED PLAINTIFFS

### Michael Molock

32.     Plaintiff Michael Molock was hired on April 23, 2012, to work at the Whole

Foods store located at 1440 P Street, NW, Washington, DC,[3] where he continues to work as a

Team Member. Mr. Molock's base salary has ranged from approximately $11 per hour to $13

per hour during his employment. During his interview with Store Manager Victor Vasquez and

Team Leader Rosalia Garcia, which took place on or about April 16, 2012, at approximately

10:30-11:30 a.m., Defendants promised to Plaintiff Molock that if he worked for Whole Foods,

he would receive an hourly base wage, plus mandatory bonuses under the Gainsharing program

described above.

33.     Plaintiff Molock was considering other employment opportunities, but relied on

these express representations made by Mr. Vasquez and Ms. Garcia and accepted the job on

those terms. Plaintiff Molock began working the next day on April 24, 2012.

34.     At his orientation (8:00 a.m. to 4:00 p.m. on April 24, 2012), which was

facilitated by an employee named Crystal (last name unknown), Plaintiff Molock was provided

with materials that again represented that mandatory Gainsharing bonuses were part of the

compensation package for his employment by Defendants, echoing the same promises made to

him in his interviews with Mr. Vasquez and Ms. Garcia.

---

[3] Defendants have admitted that the employees at this particular store had not been paid the Gainsharing bonuses earned by the employees due to illicit conduct.

35.     Midday on an afternoon in early May 2012, Payroll/Benefits Specialist ("PBS") LasShonce Howard, a human resources representative, again explained the Gainsharing program to Plaintiff Molock, stating that the benefits would accrue automatically after he became a Team Member.[4]

36.     Plaintiff Molock became a Prepared Foods Team Member in late June 2012. At the time, Mr. Vasquez was the Store Manager and Ms. Garcia was the Team Leader.

37.     Plaintiff Molock agreed to be transferred to the Specialty Team on March 21, 2016. At the time, Mr. Vasquez was the Store Manager and Andrea Ussery was the Team Leader. Ms. Ussery again represented to Mr. Molock that he, as a member of her team, would be paid not only a base salary, but mandatory Gainsharing bonuses, promises he accepted in agreeing to work in the Specialty Department.

38.     Throughout Plaintiff Molock's entire tenure at Whole Foods, Gainsharing reports that listed guaranteed wages were posted for employees to view each month, at least once a month.

39.     In reliance upon the representations of Mr. Vasquez, Ms. Garcia, Ms. Howard, Ms. Ussery, the orientation materials, and the monthly Gainsharing reports, Plaintiff Molock worked hard to increase the productivity of his department in order to maximize its surplus and therefore earn more individually.

40.     In approximately December 2016, Plaintiff Molock was informed by a corporate regional Whole Foods official that Defendants had illicitly shifted labor costs, effectively stealing money he had earned under his employment contract. As a result of this practice, Plaintiff Molock lost money throughout his entire tenure at Whole Foods.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

---

[4] Employees became Team Members upon being voted onto a team.

41.     Mr. Vasquez was fired by Defendants in connection with the illicit shifting of labor costs that occurred at the store located at 1440 P Street, NW, Washington, DC. Upon information and belief, Ms. Ussery continues to work as the Specialty Team Leader.

42.     In recognition of the illicit nature of shifting labor costs, Defendants have tried to pay Plaintiff Molock a small portion of the money he earned through Gainsharing but did not receive in an effort to buy peace.

43.     Plaintiff Molock continues to work at the Whole Foods store located at 1440 P Street, NW, Washington, DC.

### Randal Kuczor

44.     Plaintiff Randal Kuczor was employed by Defendants from October 2003 through November 2015. He worked at Defendants' store located at 1440 P Street, NW, Washington, DC, as a Team Member in the Specialty Department. Mr. Kuczor's salary ranged from approximately $8.25 per hour to $20.85 per hour. He was hired on October 13, 2003, by Jane Person (Store Manager) and Francis Loughrin (Team Leader of the Specialty Department) to work at the P Street store. During his interview, which occurred on the same day of October 13, 2003, around midday, Defendants, by and through Ms. Person and Mr. Loughrin, promised to Plaintiff Kuczor that if he worked for Whole Foods, he would receive an hourly base wage, plus mandatory bonuses under the Gainsharing program as described above. Plaintiff Kuczor was considering other employment opportunities, but relied on these express representations made by Ms. Person and Mr. Loughrin, and accepted the job on those terms. Plaintiff Kuczor began working at the Whole Foods located at 1440 P Street, NW in Washington, DC, on October 19, 2003—his start date.

45.     Mr. Kuczor's one-day orientation took place over thirteen (13) hours, from 8:00 a.m. to 9:30 p.m., on a day in mid-November 2003, approximately one month after his

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

interview. During the orientation, Ms. Person provided him with materials that again represented that mandatory Gainsharing bonuses were part of the compensation package for his employment by Defendants, and echoed the promises that both she and Mr. Loughrin had made during Plaintiff Kuczor's initial interview.

46.     Plaintiff Kuczor's Gainsharing benefits vested three months after his start date, after he was voted onto the specialty department in January 2004. Throughout Plaintiff Kuczor's entire tenure at Whole Foods, Gainsharing reports that listed guaranteed wages were posted for employees to view each month, at least once a month.

47.     In reliance upon the representations of Ms. Person, Mr. Laughrin, the orientation materials, and the monthly Gainsharing reports, Plaintiff Kuczor worked hard to increase the productivity of his department in order to maximize its surplus and therefore earn more individually.

48.     In approximately December 2016, Plaintiff Kuczor learned that Whole Foods regional representatives admitted that Defendants had illicitly shifted labor costs, effectively stealing money he had earned under his employment contract. As a result of this practice, Plaintiff Kuczor lost money throughout his entire tenure at Whole Foods.

49.     Plaintiff Kuczor employment at Whole Foods ended in November 2015.

## Carl Bowens

50.     Plaintiff Carl Bowens has been employed by Defendants from September 2014 through the present. Specifically, he has worked at the store located at 2700 Wilson Boulevard, Arlington, VA, as a Team Member in the prepared foods department. Mr. Bowens was hired on September 6, 2014, by a recruiting team. During his interview, which took place at approximately 10:00 a.m. on August 19, 2014, Defendants, by and through Paul Johnson (Customer Service Team Leader) and Brian Schneikert (Prepared Foods Team Leader),

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

14

promised to Plaintiff Bowens that if he worked for Whole Foods, he would receive an hourly base wage, plus mandatory bonuses under the Gainsharing program as described above. Plaintiff Bowens was considering other employment opportunities, but relied on these express representations made by Mr. Johnson and Mr. Schneikert, and accepted the job on those terms.

51.     Plaintiff Bowens went through a two-day orientation process that took place on September 10, 2014, from 9:00 a.m. to 11:00 a.m., and September 13, 2014, from 8:30 a.m. to 1:00 p.m. Orientation was conducted by PBS Joyce Wanda, a human resources employee, along with at least one other employee. They provided Plaintiff Bowens with materials that again represented that mandatory Gainsharing bonuses were part of the compensation package for his employment by Defendants, and made similar promises that Mr. Johnson and Mr. Schneickert had made during the initial interview regarding the automatic nature of Gainsharing.

52.     Shortly thereafter, Plaintiff Bowens was placed on the Prepared Foods Team and vested for Gainsharing. Mr. Schneickert remained the Team Leader for approximately 1.5 years, after which he was replaced by Lu Ye.

53.     Mike Ameg was the Store Manager, and he, too, expressly stated to Plaintiff and others that Gainsharing was guaranteed, promises Plaintiff relied upon to remaining an employee and forgoing alternative jobs.

54.     Throughout Plaintiff Bowens's entire tenure at Whole Foods, Gainsharing reports that listed guaranteed wages were posted for employees to view each month, at least once a month.

55.     In reliance upon the representations of Mr. Johnson, Mr. Schneickert, Ms. Wanda, Mr. Ameg, the orientation materials, and the monthly Gainsharing reports, Plaintiff

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

Bowens worked hard to increase the productivity of his department in order to maximize his surplus and therefore earn more individually.

56.    In approximately December 2016, Plaintiff Bowens was informed by his Whole Foods regional representatives that Defendants had illicitly shifted labor costs, effectively stealing money he had earned through his employment contract. As a result of this practice, Plaintiff Bowens lost money throughout his entire tenure at Whole Foods.

57.    Mr. Ameg, the Store Manager at the store where Plaintiff Bowens has worked from his date of hire on September 6, 2014, was fired in December 2016 for his alleged role in the illicit shifting of labor costs.

58.    In recognition of the illicit nature of shifting labor costs, Defendants attempted to pay Plaintiff Bowens a portion of the money to which he was entitled under the Gainsharing program in an effort to buy peace.

**Jose Fuentes**

59.    Plaintiff Jose Fuentes was employed by Defendants from September 2004 through August 2016. During that time, Mr. Fuentes worked at the stores located at 2323 Wisconsin Avenue, NW, Washington, DC; 4420 Willard Avenue, Chevy Chase, MD; 11660 Plaza America Drive, Reston, VA; and 10275 Little Patuxent Parkway, Columbia, MD. He worked as a Team Member in the Grocery Department. Mr. Fuentes's salary ranged from approximately $7.50 per hour to $18.25 per hour.

60.    He was hired on or about September 8, 2004, to work at the Whole Foods store located at 2323 Wisconsin Avenue, NW, Washington, DC. During his interview, Abduli Jobi, a Team Leader, promised Plaintiff Fuentes that if he worked for Whole Foods, he would receive an hourly base wage, plus mandatory bonuses under the Gainsharing program as described

above. Plaintiff Fuentes was considering other employment opportunities, but relied on these express representations made by Mr. Jobi and accepted the job on those terms.

61.     Mr. Fuentes start date was September 11, 2004. An orientation program took place approximately one month later. Orientation was run by Elaine (last name unknown), a human resources employee, who provided Plaintiff Fuentes with materials that again represented that mandatory Gainsharing bonuses were part of the compensation package for his employment by Defendants, and she made similar express promises that Mr. Jobi had made during the initial interview regarding the automatic nature of Gainsharing.

62.     Shortly thereafter, Mr. Fuentes was voted onto the Grocery Department Team and vested for Gainsharing.

63.     In May 2010, Plaintiff Fuentes moved to the Whole Foods store located at 4420 Willard Avenue, Chevy Chase, Maryland. Plaintiff Fuentes was interviewed by Dan Schumacher, a Team Leader, at approximately 10:00 a.m. on a mid-April day in 2010. Mr. Schumacher promised Plaintiff Fuentes he would receive an hourly wage, plus mandatory bonuses under the Gainsharing program if his department maximized sales while keeping labor costs low. Plaintiff Fuentes relied on those promises in agreeing to work in the Chevy Chase store as opposed to seeking an alternative job. Throughout his tenure at the Chevy Chase store, Plaintiff Fuentes worked in the Grocery Department.

64.     In July 2012, Plaintiff Fuentes moved to the Whole Foods store located at 11660 Plaza Americana Drive, Reston Virginia. Plaintiff Fuentes was interviewed by a group of Whole Foods representatives that included Dan Rosenthal and John Bolte.[5] During the interview, which began at approximately 10:00 a.m., Mr. Rosenthal, Mr. Bolte, and the others, all promised

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

_____

[5] Plaintiff Fuentes believes that Dan Rosenthal was a Team Leader and that John Bolte was an Assistant Manager.

17

Plaintiff Fuentes that he would receive an hourly wage, plus mandatory bonuses under the Gainsharing program if his department maximized sales while keeping labor costs low. Throughout his tenure at the Reston store, Plaintiff Fuentes worked in the grocery department.

65.     On August 20, 2014, Plaintiff Fuentes moved to the Whole Foods store located at 10275 Little Patuxent Parkway, Columbia, MD. On a day approximately one or two months earlier, at about 10:00 a.m., he was interviewed by Nelson Amaya, a Grocery Team Leader, who promised Plaintiff Fuentes he would receive an hourly wage, plus mandatory bonuses under the Gainsharing program if his department maximized sales while keeping labor costs low. Plaintiff relied upon those promises in agreeing to work in the Columbia store. Throughout his tenure at the Columbia store, Plaintiff Fuentes worked as a buyer in the Grocery Department.

66.     Svetlana Bautista was the Store Manager at the Columbia store. She also confirmed the automatic nature of Gainsharing. She was fired by Defendants in December 2016 as a result of the illicit cost-shifting.

67.     Throughout Plaintiff Fuentes's entire tenure at the various Whole Foods stores, Gainsharing reports that listed guaranteed wages were posted for employees, including Plaintiff, to view each month, at least once a month.

68.     In reliance upon the representations of Mr. Jobi, Mr. Schumacher, Mr. Rosenthal, Mr. Bolte, Mr. Amaya, Ms. Bautista, the orientation materials, and monthly Gainsharing reports, Plaintiff Fuentes worked hard to increase the productivity of his department in order to maximize its surplus and therefore earn more individually.

69.     Plaintiff Fuentes voluntarily resigned from Whole Foods in August 2016.

**Christopher Milner**

70.     Plaintiff Christopher Milner has been employed by Defendants from August 2002, through the present. During that time, he has worked in the stores located at 81 S Elliot

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

Road, Chapel Hill, NC; 621 Broad Street, Durham, NC; 1440 P Street, NW, Washington, DC; 5269 River Road, Bethesda, MD; and 2907 Washington Road, Augusta, GA. He worked as a Team Member in the Specialty Foods Department.

71.     Mr. Milner was interviewed and hired in the late morning to early afternoon on August 12, 2002, to work at the Whole Foods store located at 81 South Elliott Road, Chapel Hill, NC. During his interview, Plaintiff Milner met with Jessica Dees, a team leader, and a store manager by the name of Anna.[6] Throughout the interview, Ms. Dees and Anna promised Plaintiff Milner that if he worked for Whole Foods, he would receive an hourly base wage, plus mandatory bonuses under the Gainsharing program as described above. Plaintiff Milner was considering other employment opportunities, but relied on these express representations made by Ms. Dees and Anna, and accepted the job on those terms.

72.     On the second day of a two-day orientation, which was held at the Chapel Hill store a day or two after August 12, 2002, Plaintiff Milner viewed a PowerPoint presentation that was presented by Asha, a PBS representative from human resources.[7] During that orientation day, Asha explained the Gainsharing program and made similar promises to those that Ms. Dees and Anna had made during the initial interview. Asha expressly reaffirmed the hourly wage and Gainsharing program.

73.     Shortly thereafter, Mr. Milner was voted onto the Specialty Department Team and vested for Gainsharing.

74.     In June 2005, Plaintiff Milner moved to the Whole Foods located at 621 Broad Street, Durham, NC. He was interviewed by John David Harmon, a Regional Coordinator, Chris Parrott, a Store Leader, and other team members at approximately 1:30 p.m. on an afternoon in

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

---

[6] Plaintiff Milner is unable to recall Anna's last name, but believes it began with "Vander-."
[7] Plaintiff Milner is unable to recall Asha's last name.

early to mid-June. Mr. Harmon and Mr. Parrott told Plaintiff Milner he would receive an hourly wage, plus mandatory bonuses under the Gainsharing program if his department maximized sales while keeping labor costs low. Plaintiff Milner relied on these promises in accepting the position.

75.    In July 2007, Plaintiff Milner moved to the Whole Foods store located at 1440 P Street, NW, Washington, DC. He was interviewed on or about July 10, 2007, by Eliza Burns, a Regional Coordinator, Margaret Siminao, a Team Leader, and other team members, and was offered a position as an Associate Team Leader. Ms. Burns and Ms. Siminao told Plaintiff Milner that he would receive an hourly wage, plus mandatory bonuses under the Gainsharing program if his department maximized sales while keeping labor costs low. Plaintiff Milner relied on these promises in accepting the position.

76.    Mr. Victor Vasquez was the Store Manager at the P Street store, and he also represented to Plaintiff that he was automatically entitled to Gainsharing. Plaintiff Milner relied upon these promises.

77.    In March 2009, Plaintiff Milner began filling in for a Team Leader who was away on medical leave at the Whole Foods located at 5269 River Road, Bethesda, MD. In June 2009, Plaintiff Milner officially began working at the Bethesda store. At approximately 10:30 a.m. on a morning in early June, he was interviewed by Don Powers, Store Manager, along with team leaders and employees. Mr. Powers and the others who interviewed him, told Plaintiff Milner that he would receive an hourly wage, plus mandatory bonuses under the Gainsharing program if his department maximized sales while keeping labor costs low. Plaintiff Milner relied on these promises in accepting the position.

78.     On or about November 22, 2010, Plaintiff Milner was transferred back to the Whole Foods store located at 1440 P Street, NW, Washington, DC. Plaintiff Milner was approved by Yared Faleke, a Team Leader, to work as a Team Member. Mr. Faleke told Plaintiff Milner that he would receive an hourly wage, plus mandatory bonuses under the Gainsharing program if his department maximized sales while keeping labor costs low. Plaintiff Milner relied on these promises in accepting the position.

79.     Mr. Victor Vasquez was the Store Manager at the P Street store at that time, and he also again represented to Plaintiff that he was automatically entitled to Gainsharing, promises Mr. Milner relied upon.

80.     In late August 2016, Plaintiff Milner moved to the Whole Foods located at 2907 Washington Road, Augusta, GA.[8] Around midday on a day on late July 2016, Plaintiff Milner was interviewed by Matt Pattison, a Team Leader. Mr. Pattison told Plaintiff Milner that he would receive an hourly wage, plus mandatory bonuses under the Gainsharing program if his department maximized sales while keeping labor costs low. Plaintiff Milner relied on these promises in accepting the position.

81.     Throughout Plaintiff Milner's entire tenure at Whole Foods, Gainsharing reports that listed guaranteed wages were posted for employees to view each month, at least once a month.

82.     In reliance upon the representations of Ms. Dees, Anna, Asha, Mr. Harmon, Mr. Parrott, Ms. Burns, Ms. Siminao, Mr. Powers, Mr. Faleke, and Mr. Pattison, the orientation materials, and monthly Gainsharing reports, Plaintiff Milner worked hard to increase the

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

---

[8] This store has since closed.

productivity of his department in order to maximize its surplus and therefore earn more individually.

83.     Around December 2016, Plaintiff Milner learned that Whole Foods regional representatives admitted that Defendants had illicitly shifted labor costs, effectively stealing money he had earned under his employment contract. As a result of this practice, Plaintiff Milner lost money throughout his entire tenure at Whole Foods.

84.     Plaintiff Milner's employment with Whole Foods ended in February 2017 when the Augusta store closed.

**Jon Pace**

85.     Plaintiff Jon Pace has been employed by Defendants from January 2007, through the present. Mr. Pace has worked at the store located at 2700 Wilson Boulevard, Arlington, VA, as a Team Member in the Meat Department. He was hired on or around January 1, 2007. During his interview, Defendants' managers promised to Plaintiff Pace that if he worked for Whole Foods, he would receive an hourly base wage, plus mandatory bonuses under the Gainsharing program as described above. Plaintiff Pace was considering other employment opportunities, but relied on these express representations made and accepted the job on those terms.

86.     At orientation, Plaintiff Pace was provided with materials that again represented that mandatory Gainsharing bonuses were part of the compensation package for his employment by Defendants, and Defendants' leadership made similar promises that had been made to him during the initial interview.

87.     Shortly thereafter, Plaintiff Pace began working in the Meat Department and vested for Gainsharing. He continues to work at the Arlington store in the Meat Department through the present day.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

22

88.     Throughout Plaintiff Pace's entire tenure at Whole Foods, Gainsharing reports that listed guaranteed wages were posted for employees to view each month, at least once a month.

89.     In reliance upon the representations of his employers, the orientation materials, and monthly Gainsharing reports, Plaintiff Pace worked hard to increase the productivity of his department in order to maximize its surplus and therefore earn more individually.

90.     Around December 2016, Plaintiff Pace was informed by his Whole Foods regional representatives that Defendants had illicitly shifted labor costs, effectively stealing money he had earned through under his employment contract. As a result of this practice, Plaintiff Pace lost money throughout his entire tenure at Whole Foods.

91.     Michael Ameg was the store manager of Plaintiff Pace's Whole Foods store until he was fired by Whole Foods for his alleged role in the illicit shifting of labor costs.

**Sarah Strickland**

92.     Plaintiff Sarah Strickland was employed by Defendants from 2010 through January 6, 2017. Ms. Strickland worked at the store located at 1401 East 41st Street, Tulsa, OK, as a Team Member in the Prepared Foods Department and Produce Departments. She was hired in December 2010.

93.     Plaintiff Strickland's interview occurred between the late morning and early afternoon on or about December 3, 2010, with three managers, including Steve Kramer.[9] Mr. Kramer and the other store managers promised Plaintiff Strickland that if she worked for Whole Foods, she would receive an hourly base wage, plus mandatory bonuses under the Gainsharing program as described above. Plaintiff Strickland was considering other employment

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

---

[9] Plaintiff is unsure of the correct spelling of this manager's last name.

opportunities, but relied on these express representations made by Mr. Kramer and the other store managers, and accepted the job on those terms.

94.     At her orientation on December 10, 2010, which was led by Celeste McNeal, a human resources representative, Plaintiff Strickland was provided with materials that again represented that mandatory Gainsharing bonuses were part of the compensation package for her employment by Defendants, and made similar promises that Mr. Kramer had made during the initial interview, promises Plaintiff relied upon in agreeing to continue working for Defendants.

95.     After thirty (30) days of employment with Whole Foods, Plaintiff Strickland was placed on the Prepared Foods Team and was vested for Gainsharing. Plaintiff Strickland's Prepared Foods Team Leader was Reggie Carmon, who also confirmed that Plaintiff Strickland would receive an hourly wage, plus automatic Gainsharing benefits if the department met or exceeded financial expectations.

96.     Throughout Plaintiff Strickland's entire tenure at Whole Foods, Gainsharing reports that listed guaranteed wages were posted for employees to view each month, at least once a month.

97.     In reliance upon the representations of Mr. Kramer, Ms. McNeal, Mr. Carmon, the orientation materials, and monthly Gainsharing reports, Plaintiff Strickland worked hard to increase the productivity of her department in order to maximize its surplus and therefore earn more individually.

98.     Around December 2016, Plaintiff Strickland learned that Whole Foods admitted that Defendants had illicitly shifted labor costs at stores, that store managers were fired, and that the managers confirmed that the illicit activity had been occurring nationwide, effectively

stealing money she had earned under her employment. As a result of this practice, Plaintiff

Strickland lost money throughout her entire tenure at Whole Foods.

99.     Plaintiff Strickland ended her employment with Whole Foods in January 2017.

## CLASS ACTION ALLEGATIONS

100.     Plaintiffs seek to bring this case on behalf of themselves and all other employees

of Whole Foods who were employed by Whole Foods in the District of Columbia, Georgia,

Maryland, North Carolina, Oklahoma, Virginia, and throughout the country. Accordingly, this

case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) and (3).

101.     The class shall be defined as past and present employees of Whole Foods who

were not paid wages owed to them under the Gainsharing program. The class shall include the

following subclasses:

a.  Past and present employees of Whole Foods who were employed in the District of Columbia and did not receive all earned wages at least twice during each calendar month on regular paydays in violation of the DCWPCL.

b.  Past employees of Whole Foods who were employed in the District of Columbia and were not paid all earned wages within 7 days after resignation or termination.

c.  Past and present employees of Whole Foods who were employed in the State of Maryland and did not receive all earned wages at least once in every 2 weeks or twice in each month on regular paydays, in violation of MD Code, Labor and Employment, § 3-502.

d.  Past employees of Whole Foods who were employed in the State of Maryland and were not paid all earned wages for work that the employee performed before the termination of employment, on or before the employee's next anticipated payday, in violation of MD Code, Labor and Employment, § 3-505.

e.  Past and present employees of Whole Foods who were employed in the State of Maryland and were not at the time of their hiring provided full and accurate notice of their rates of pay, in violation of MD Code, Labor and Employment, § 3-504.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

     f.   Past and present employees of Whole Foods who were employed in the State of Oklahoma and did not receive all earned wages at least twice each calendar month on regular paydays designated in advance by the employer, in violation of 40 Okl. St. § 165.2.

     g.   Past employees of Whole Foods who were employed in the State of Oklahoma and were not paid all earned wages, less offsets and less any amount over which a bona fide disagreement exists, at the employee's next anticipated payday, in violation of 40 Okl.St.Ann. § 165.3.

102.    The proposed class is so numerous that joinder of all members is impractical. On information and belief, Defendants employ approximately 91,000 workers. Upon information and belief, there are at least twenty thousand (potentially many more) past and present employees of Whole Foods who were not properly paid wages as required under the Whole Foods Gainsharing program.

103.    There are common questions of law and fact common to the class, because Defendants failed to pay their employees all earned wages under the Gainsharing program. The failure to pay their employees wages under the Gainsharing resulted from the common, corporate-wide practice of "shifting labor costs."

104.    Defendants' failure to properly and fully compensate employees of Whole Foods was common as to all employees, because Whole Foods failed to pay their employees bonuses that had been earned under the Gainsharing program. Accordingly, the wage theft against Plaintiff is typical, and representative, of the wage theft suffered by all past or present employees of Whole Foods.

105.    Plaintiffs can, and will, adequately represent the interests of the class because Plaintiffs are similarly situated with, and have suffered similar injuries as, the members of the class they seek to represent. Plaintiffs have no interests that conflict with or antagonistic to the interests of the entire class. Plaintiffs have retained Salvatore Zambri of Regan Zambri Long, PLLC, which is competent to represent the Class and will vigorously prosecute this litigation.

106.     In accordance with Fed. R. Civ. P. 23(b)(1) and (3), this class action is superior to any other available method for the fair and efficient adjudication of the controversy because:

a.   Common questions of law and fact predominate over any individual questions that may arise, because all claims involve the Defendants' failure to pay their employees their full compensation as required under the Gainsharing program. The failure to pay their employees all wages under the Gainsharing program was a result of Whole Foods' corporate-wide practice of shifting labor costs.

b.   No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

c.   Upon information and belief, there are no pending lawsuits concerning this controversy.

d.   It is desirable to concentrate the litigation of these claims in this forum since the acts complained of took place in the District of Columbia and this forum is convenient to the parties, the class members, and potential witnesses. The resolution of the claims of all class members in a single forum, and in a single proceeding, would be fair and efficient means of resolving the issues raised in this litigation.

e.   The prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class, and adjudications with respect to individual members of the class that would, as a practical matter, be dispositive of the interests of the other members not party to the adjudications or substantially impair or impede their ability to protect their interests.

f.   This class is specifically identifiable to facilitate provision of adequate notice and there will be no significant problems managing this case as a class action.

g.   Resolution of class members' claims in this single class action is superior to resolution of this controversy through the filing of a host of individual actions as a matter of efficiency, consistency and in that it removes economic and other barriers to class members pursuing their claims. Absent this class action, class members will not likely obtain redress of their injuries and Defendants would retain the proceeds of their violations of the laws of the District of Columbia.

## COUNT I
### (BREACH OF CONTRACT AND
### BREACH OF GOOD FAITH AND FAIR DEALING)

107.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

108.    At all times relevant, Defendants orally contracted to employ each Plaintiff. As consideration for Plaintiffs' labor, Defendants promised (*see supra*, ¶¶ 32-99) to provide each Plaintiff with a compensation package that (in addition to a base salary and benefits) included automatic payments under the Gainsharing profit-sharing program, to be calculated and paid as set forth above (*see supra*, ¶¶ 15-17). In other words, payments under the Gainsharing program were a material term of Defendants' employment contracts with Plaintiffs. The relevant terms are further evidenced in at least two documents: (1) Defendants' "General Information Guide" (which was provided to all employees at the time of hire) and (2) Defendants' "Gainsharing Policies and Procedures" document.

109.    By performing the work they were hired to do for Defendants, and by specifically generating surpluses (by increasing sales while holding labor costs down; *see supra* ¶¶ 15-17), Plaintiffs performed the duties required of them under their contracts with Defendants.

110.    Whole Foods breached its contracts with Plaintiffs by "shifting labor costs" and then not paying Plaintiffs the full compensation they had been promised under the terms of their employment contracts with Defendants (*i.e.*, the automatic, mandatory bonuses that they had earned under the Gainsharing program).

111.    As a direct result of the breach of contract and implied duty of good faith and fair dealing, Plaintiffs were caused to suffer severe damages to be determined at trial.

112.     WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief in the form of a judgment against Defendants, jointly and severally, by awarding Plaintiffs compensatory damages; equitable relief; court costs; and any other relief the Court deems proper.

**COUNT II**
**(UNJUST ENRICHMENT)**

113.     Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

114.     At all times relevant, Plaintiffs conferred a benefit on Defendants. Specifically, as part of their employment, Plaintiffs worked in their department at the Whole Foods stores at various stores under budget. Under Whole Foods agreement with Plaintiffs, when the departments in which Plaintiffs worked were under budget, the surplus was to be disbursed to Plaintiffs and their coworkers as a bonus.

115.     Rather than pay Plaintiffs (and those similarly situated) the bonuses they earned through the Gainsharing program, Whole Foods retained the surplus for its own benefit and to increase its profit margin.

116.     Because Whole Foods retained the budget surplus for its own benefit, rather than pay the budget surplus to its employees as it agreed, Whole Foods unjustly enriched itself at the expense of its employees.

117.     WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief in the form of a judgment against Defendants, jointly and severally, by awarding Plaintiffs compensatory damages; equitable relief; court costs; and any other relief the Court deems proper.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

## COUNT III
**(FAILURE TO PAY WAGES UPON DISCHARGE IN VIOLATION OF
D.C. WAGE PAYMENT AND COLLECTION LAW, D.C. CODE § 32-1303)**
(District of Columbia Subclass)

118.     Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

119.     Plaintiff Kuczor entered into a forced resignation, pursuant to an alleged reduction in force from him his employment with Defendants on or about November 6, 2016. Defendants, however, willfully failed to pay Plaintiff Kuczor all wages owed to him not later than the working day following such discharge in violation of D.C. Code § 32-1303. At the time Plaintiff Kuczor entered into a severance agreement, Defendants willfully, wantonly, recklessly, and without regard to the well-being of Plaintiff, withheld from him the fact that they engaged in fraudulent conduct, stripping him of bonuses to which he was entitled.

120.     Specifically, Defendants owe Plaintiff Kuzcor the bonuses that he earned under the Gainsharing program that Defendants failed to pay Plaintiff as the result of the Defendants' unlawful shifting of labor costs.

121.     Pursuant to D.C. Code § 32-1303(4), Plaintiff Kuczor is entitled to liquidated damages in the amount of ten percent (10%) of the unpaid wages per working day after the day that wages were due or an amount equal to treble the unpaid wages, whichever is smaller.

122.     Under D.C. Code § 32-1308, Plaintiff Kuczor is entitled to costs of this action, including reasonable attorneys' fees, expert witness fees, depositions fees, witness fees, juror fees, filing fees, certification fees, the costs of collecting and presenting evidence, and any other costs incurred in connection with obtaining, preserving, or enforcing the judgment.

123.     WHEREFORE, Plaintiff Kuczor, on behalf of himself and all others similarly situated, prays for relief in the form of a judgment against Defendants, jointly and severally, by

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

awarding Plaintiff Kuczor and all others similarly situated compensatory damages; liquidated damages in the amount of treble unpaid wages; punitive damages; equitable relief; reasonable attorneys' fees and expenses; court costs; and any other relief the Court deems proper.

**COUNT IV**
**(FAILURE TO PAY WAGES IN VIOLATION OF**
**D.C. WAGE PAYMENT AND COLLECTION LAW, D.C. CODE § 32-1302)**
(District of Columbia Subclass)

124.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

125.    Under D.C. Code § 32-1302, "[e]very employer shall pay all wages earned to his employees at least twice during each calendar month, on regular paydays designated in advance by the employer." Wages that must be paid at least twice a month on regular paydays, includes commission based wages.

126.    Defendants violated D.C. Code § 32-1302 by failing to pay Plaintiffs, and all others similarly situated, all of their earned wages, including wages for their contractually agreed upon commissions, at least twice during each calendar month.

127.    WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief in the form of a judgment against Defendants, jointly and severally, by awarding Plaintiffs and all others similarly situated compensatory damages; liquidated damages in the amount of treble unpaid wages; punitive damages; equitable relief; reasonable attorneys' fees and expenses; court costs; and any other relief the Court deems proper.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

## COUNT V
### (FAILURE TO MAINTAIN ACCURATE EMPLOYMENT RECORDS
### D.C. MINIMUM WAGE ACT, D.C. CODE § 32-1008)
(District of Columbia Subclass)

128.   Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

129.   Under D.C. Code § 32-1008, every employer "shall make, keep, and preserve for a period of not less than 3 years or whatever the prevailing federal standard is, whichever is greater, a record of: (A) The name, address, and occupation of each employee; (B) A record of the date of birth of any employee under 19 years of age; (C) The rate of pay and the amount paid each pay period to each employee; (D) The precise time worked each day and each workweek by each employee.…"

130.   Defendants violated D.C. Code § 32-1008 by failing to maintain accurate records with respect to employee bonuses under the Gainsharing program. Indeed, Whole Foods admitted that records had been falsified with respect to the Gainsharing program that deprived employees of their earned bonuses.

131.   As a result of Defendants' failure to maintain accurate employment records relating to the Gainsharing program, Plaintiffs have suffered significant damages.

132.   WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief in the form of a judgment against Defendants, jointly and severally, by awarding Plaintiffs compensatory damages; liquidated damages in the amount of treble unpaid wages; punitive damages; equitable relief; reasonable attorneys' fees and expenses; court costs; and any other relief the Court deems proper.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

## COUNT VI
### (FAILURE TO PAY WAGES UPON DISCHARGE IN VIOLATION OF
### MARYLAND WAGE PAYMENT AND COLLECTION LAW § 3-504)
(Maryland Subclass)

133.     Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

134.     Plaintiff Fuentes's employment by Defendants ended in August 2016.

135.     Under MD Code, Labor and Employment, § 3-505, Defendants were obligated to pay him all wages due for work that he performed before the termination of employment, on or before the day on which he would have been paid the wages if the employment had not been terminated.

136.     By not paying him the bonuses that he had earned under the Gainsharing program, Defendants violated the statute.

137.     Pursuant to MD Code, Labor and Employment, § 3-507.2, Plaintiff Fuentes, and all others similarly situated, are entitled to treble damages, as well as reasonable attorneys' fees and costs.

138.     WHEREFORE, Plaintiff Fuentes, on behalf of himself and all others similarly situated, prays for relief in the form of a judgment against Defendants, jointly and severally, by awarding Plaintiff Fuentes and all others similarly situated compensatory damages; liquidated damages in the amount of treble unpaid wages; punitive damages; equitable relief; reasonable attorneys' fees and expenses; court costs; and any other relief the Court deems proper.

## COUNT VII
### (FAILURE TO PAY WAGES IN VIOLATION OF
### MARYLAND WAGE PAYMENT AND COLLECTION LAW § 3-502)
(Maryland Subclass)

139.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

140.    Plaintiffs Fuentes and Milner worked at Defendants' stores in Maryland during the relevant time period.

141.    Under MD Code, Labor and Employment, § 3-502, Defendants were obligated to pay them all earned wages at least once in every 2 weeks or twice in each month on regular paydays.

142.    By not paying them the bonuses that he earned under the Gainsharing program, Defendants violated the statute.

143.    Pursuant to MD Code, Labor and Employment, § 3-507.2, Plaintiffs Fuentes and Milner, and all others similarly situated, are entitled to treble damages, as well as reasonable attorneys' fees and costs.

144.    WHEREFORE, Plaintiffs Fuentes and Milner, on behalf of themselves and all others similarly situated, pray for relief in the form of a judgment against Defendants, jointly and severally, by awarding Plaintiffs and all others similarly situated compensatory damages; liquidated damages in the amount of treble unpaid wages; punitive damages; equitable relief; reasonable attorneys' fees and expenses; court costs; and any other relief the Court deems proper.

## COUNT VIII
### (FAILURE TO INFORM OF WAGES IN VIOLATION OF
### MARYLAND WAGE PAYMENT AND COLLECTION LAW § 3-504)
(Maryland Subclass)

145.     Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

146.     Plaintiffs Fuentes and Milner worked at Defendants' stores in Maryland during the relevant time period.

147.     Under MD Code, Labor and Employment, § 3-504, Defendants were obligated, at the time of their hiring, to provide them with full and accurate notice of their rates of pay.

148.     By not providing them with the full details of how their rates of pay would be calculated under the Gainsharing program, Defendants violated the statute.

149.     Pursuant to MD Code, Labor and Employment, § 3-507.2, Plaintiffs Fuentes and Milner, and all others similarly situated, are entitled to treble damages, as well as reasonable attorneys' fees and costs.

150.     WHEREFORE, Plaintiffs Fuentes and Milner, on behalf of themselves and all others similarly situated, pray for relief in the form of a judgment against Defendants, jointly and severally, by awarding Plaintiffs and all others similarly situated compensatory damages; liquidated damages in the amount of treble unpaid wages; punitive damages; equitable relief; reasonable attorneys' fees and expenses; court costs; and any other relief the Court deems proper.

<u>COUNT IX</u>
**(FAILURE TO PAY WAGES UPON DISCHARGE IN VIOLATION OF**
**40 Oklahoma Statutes § 165.3)**
(Oklahoma Subclass)

151.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

152.    Plaintiff Strickland's employment by Defendants ended in January 2017.

153.    Under 40 Oklahoma Statutes § 165.3, Defendants were obligated to pay her all wages due, in full, less offsets and less any amount over which a bona fide disagreement exists, at the next regular designated payday established for the pay period in which the work was performed.

154.    By not paying her the bonuses that she had earned under the Gainsharing program, Defendants violated the statute.

155.    Pursuant to 40 Oklahoma Statutes §§ 165.3 and 165.9, Plaintiff Strickland, and all others similarly situated, are entitled to her unpaid wages, attorneys' fees, costs, and liquidated damages (in the amount of two percent (2%) of the unpaid wages for each day upon which such failure shall continue after the day the wages were earned and due if the employer willfully withheld wages over which there was no bona fide disagreement; or in an amount equal to the unpaid wages, whichever is smaller).

156.    WHEREFORE, Plaintiff Strickland, on behalf of herself and all others similarly situated, prays for relief in the form of a judgment against Defendants, jointly and severally, by awarding Plaintiff Strickland and all others similarly situated compensatory damages; liquidated damages as calculated by 40 Oklahoma Statutes §§ 165.3; punitive damages; equitable relief; reasonable attorneys' fees and expenses; court costs; and any other relief the Court deems proper.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

## COUNT X
## (FAILURE TO PAY WAGES IN VIOLATION OF
## 40 Oklahoma Statutes § 165.2)
### (Oklahoma Subclass)

157.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

158.    Plaintiff Strickland worked at Defendants' store in Oklahoma during the relevant period.

159.    Under 40 Oklahoma Statutes § 165.2, Defendants were obligated to pay her all wages due at least twice each calendar month on regular paydays.

160.    By not paying her the bonuses that she had earned under the Gainsharing program, Defendants violated the statute.

161.    Pursuant to 40 Oklahoma Statutes §§ 165.2 and 165.9, Plaintiff Strickland, and all others similarly situated, are entitled to her unpaid wages, attorneys' fees, costs, and liquidated damages.

162.    WHEREFORE, Plaintiff Strickland, on behalf of herself and all others similarly situated, prays for relief in the form of a judgment against Defendants, jointly and severally, by awarding Plaintiff Strickland and all others similarly situated compensatory damages; liquidated damages; punitive damages; equitable relief; reasonable attorneys' fees and expenses; court costs; and any other relief the Court deems proper.

## COUNT XI
## (COMMON LAW FRAUD)

163.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

164.    As set forth above (*see supra* ¶¶ 32-99), over the course of interviewing, hiring,

training, and employing each Plaintiff, Defendants (through the respective store managers,

department managers, human resources employees, and documents identified above) falsely

represented to Plaintiffs, and those similarly situated, that they would be paid the mandatory

bonuses they earned under the Gainsharing program during their tenure at Whole Foods. Those

misrepresentations include, without limitation, the following:

    a.  During their pre-hiring interviews, Defendants falsely misrepresented to Plaintiffs that Plaintiffs would receive mandatory bonuses under the terms of the Gainsharing program. (*See* ¶¶ 32 (Molock), 44 (Kuczor), 50 (Bowens), 60 (Fuentes), 71 (Milner), 85 (Pace), 93 (Strickland)). Defendants made these misrepresentations to fraudulently induce Plaintiffs to accept employment with Defendants.

    b.  During their orientation programs, Defendants falsely misrepresented to Plaintiffs that Plaintiffs would receive mandatory bonuses under the terms of the Gainsharing program. (*See* ¶¶ 34 (Molock), 45 (Kuczor), 51 (Bowens), 61 (Fuentes), 72 (Milner), 86 (Pace), 94 (Strickland)). Defendants made these misrepresentations to fraudulently induce Plaintiffs to continue working for them and to increase sales in their respective departments while minimizing labor costs.

    c.  In their written orientation materials, Defendants falsely misrepresented to Plaintiffs that "each Team Member would be paid one salary plus a share in the labor dollars gained," under the Gainsharing program "if Team Members working very smart and creatively generate" additional sales. (*See* ¶¶ 16 (all), 34 (Molock), 45 (Kuczor), 51 (Bowens), 61 (Fuentes), 72 (Milner), 86 (Pace), 94 (Strickland)). Defendants made these misrepresentations to fraudulently induce Plaintiffs to continue working for them and to increase sales in their respective departments while minimizing labor costs.

    d.  During pre-transfer interviews for those Plaintiffs who worked at multiple stores, and during the onboarding process at the new stores, Defendants falsely misrepresented to Plaintiffs that Plaintiffs would receive mandatory bonuses under the terms of the Gainsharing program. (*See* ¶¶ 63-65 (Fuentes), 74-80 (Milner)). Defendants made these misrepresentations to fraudulently induce Plaintiffs to accept employment with Defendants at the new locations.

    e.  Throughout Plaintiffs' tenures at Whole Foods, Defendants posted Gainsharing reports on at least a monthly basis; these reports falsely misrepresented Plaintiffs' earnings under the Gainsharing program. (*See* ¶¶

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

38 (Molock), 46 (Kuczor), 54 (Bowens), 67 (Fuentes), 81 (Milner), 88
(Pace), 96 (Strickland)). Defendants made these misrepresentations to
fraudulently induce Plaintiffs to continue working for them and to increase
sales in their respective departments while minimizing labor costs.

f.   In Defendants' General Information Guide, which was given to employees
(including Plaintiffs) at the time of hire, Defendants falsely misrepresented
that "Gainsharing rewards those factors that Team Members have most
control over, like productivity, scheduling and customer service." Defendants
made these misrepresentations to fraudulently induce Plaintiffs to continue
working for them and to increase sales in their respective departments while
minimizing labor costs.

g.   In Defendants' General Information Guide, Defendants falsely
misrepresented that wages earned under the Gainsharing program "are
directly tied to individual and team performance rather than taken from the
general profitability of an entire company." Defendants made these
misrepresentations to fraudulently induce Plaintiffs to continue working for
them and to increase sales in their respective departments while minimizing
labor costs.

h.   In Defendants' General Information Guide, Defendants falsely
misrepresented that "Gainsharing rewards teamwork and is based on team
and store performance." Defendants made these misrepresentations to
fraudulently induce Plaintiffs to continue working for them and to increase
sales in their respective departments while minimizing labor costs.

i.   In all of Defendants' communications to Plaintiffs regarding the Gainsharing
program (*see supra* ¶¶ 32-99), Defendants fraudulently omitted the material
fact that Defendants had a corporate practice of undermining the benefits
they touted by surreptitiously shifting labor costs among departments to
reduce the payments made to Plaintiffs under the program. Defendants made
these misrepresentations to fraudulently induce Plaintiffs to accept
employment with them, to continue working for them, and to increase sales
in their respective departments while minimizing labor costs.

165.   When Defendants made those misrepresentations, they knew of their falsity, in

light of the pervasive, companywide practice of "shifting labor costs," which Defendants knew

or reasonably should have known would erode—or eliminate entirely—the Gainsharing

payments they had promised to Plaintiffs. Specifically, Defendants knew that their PBS

employees and others were retroactively manipulating the labor records through Defendant

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

Whole Foods Market Inc.'s corporate headquarters in Austin, Texas, through the Kronos timekeeping system.

166.    Defendants made the misrepresentations to Plaintiffs with the intent to deceive Plaintiffs about the compensation they could expect to receive as a Defendants' employees (a material fact of the employment contract), as well as the intent to induce Plaintiffs to accept employment with them, to continue working for them, and to increase sales in their respective departments while minimizing labor costs.

167.    Plaintiffs, and those similarly situated, reasonably relied upon the repeated misrepresentations referenced above (¶ 164) by turning down other employment opportunities, by accepting employment with Defendants, by continuing to work for Defendants, and by working hard to increase the productivity of their respective departments during their tenures as Defendants' employees. (*See* ¶¶ 39 (Molock), 47 (Kuczor), 55 (Bowens), 68 (Fuentes), 82 (Milner), 89 (Pace), 97 (Strickland)).

168.    Defendants' fraudulent conduct continues to this day, as Defendants still attempt to conceal the extent of their fraudulent conduct and the wages owed to their employees across the country. For example, Defendants' spokesperson stated to the national media that the shifting of labor costs "only happened in nine of our locations." This is an attempt by Defendants to fraudulently conceal the corporate-wide practice of shifting labor costs and to avoid paying its past and present employees wages they earned under the Gainsharing program, but which Defendants wrongfully withheld and retained for themselves.

169.    As a result of Defendants' fraud, Plaintiffs have suffered severe damages. In addition, Defendants' fraudulent conduct is egregious and purposeful conduct, meant to benefit Defendants bottom line at Plaintiffs' expense. This conduct demonstrates a willful disregard for

Plaintiffs' rights and demonstrates an intent to injure Plaintiffs, thereby warranting punitive damages.

170.    WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief in the form of a judgment awarding compensatory damages, punitive damages, and any other relief the Court deems proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief in the form of a judgment against all Defendants, jointly and severally, for compensatory damages reflecting all monies lawfully owed to Plaintiffs, plus interest, in excess of $75,000; liquidated damages in the amount of treble unpaid wages; punitive damages in the amount of $200 million or ten percent (10%) of the net value of Defendants, whichever is higher; equitable relief, pre- and post-judgment interest and costs; attorneys' fees; and any other relief the Court deems proper and just.

**JURY AND TRIAL DEMAND**

Plaintiffs hereby demand a trial by jury with respect to each claim in this Complaint.

Dated: May 23, 2017                          Respectfully submitted,

REGAN ZAMBRI LONG

By:    */s/ Salvatore J. Zambri*
          Salvatore J. Zambri        D.C. Bar No. 439016
          szambri@reganfirm.com
          Christopher J. Regan     D.C. Bar No. 1018148
          cregan@reganfirm.com
          1919 M Street, NW, Suite 350
          Washington, DC 20036
          Pн:   (202) 463-3030
          Fx:   (202) 463-0667
          *Counsel for Plaintiffs*