**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL MOLOCK, et al., <br><br>             Plaintiffs, <br><br>     v. <br><br> WHOLE FOODS MARKET, INC., and <br> WHOLE FOODS MARKET GROUP, INC. <br><br>          Defendant. | **Case No.** 1:16-cv-02483-APM |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

                                   **GREENBERG TRAURIG, LLP**

                                   Gregory J. Casas
                                    Bar No. 455329
                                    300 West 6th Street, Suite 2050
                                    Austin, Texas 78701
                                    Telephone: 512.320.7200
                                    Facsimile: 512.320.7210

                                    John H. Hempfling, II
                                    (Admitted *Pro Hac Vice*)
                                    Texas State Bar No. 231788
                                    Sr. Global Litigation Counsel
                                    Whole Foods Market Central Office
                                    550 Bowie Street
                                    Austin, Texas 78703
                                    Tel: 512.542.0213
                                    John.Hempfling@wholefoods.com

                                    David Sellinger
                                    Bar No. 282780
                                    500 Campus Drive, Suite 400
                                    Florham Park, New Jersey 07932
                                    Telephone: 973.360.7900
                                    Facsimile: 973.301.8410

                                    *Attorneys for Defendants Whole Foods Market,*
                                    *Inc. and Whole Foods Market Group, Inc.*

## TABLE OF CONTENTS

Page

ARGUMENT. ....................................................................................................... 1

I.  PLAINTIFFS FAIL TO PROVIDE ANY MEANINGFUL BASIS FOR EXERCISING
    PERSONAL JURISDICTION OVER WFMI OR CLAIMS BROUGHT BY OUT-OF-
    STATE PLAINTIFFS. ....................................................................................... 1

    A.  Plaintiffs' Cut-and-Pasted Arguments From Previous Briefings Do
        Not Support the Exercise of Personal Jurisdiction Over WFMI. ............ 1

    B.  Plaintiffs' Argument that WFMI's Previously Submitted to Suit in
        the District of Columbia is Not Sufficient to Establish Personal
        Jurisdiction. .......................................................................................... 1

    C.  The Out-of-State Plaintiffs in this Case are Indistinguishable from
        Those in *Bristol-Myers*; the Court Lacks Personal Jurisdiction
        Over Those Plaintiffs' Claims. ............................................................ 2

II. PLAINTIFFS HAVE NOT ALLEGED SUFFICIENT FACTS TO STATE A PLAUSIBLE
    CLAIM FOR BREACH OF CONTRACT OR BREACH OF DUTY OF GOOD FAITH
    AND FAIR DEALING. ...................................................................................... 5

    A.  Plaintiffs Fail to Plead Sufficient Terms of the Contract and the
        Nature of the Breach to Support a Claim for Breach of Contract. .......... 6

    B.  Plaintiffs' Evolving Theories Have Now Become Self-Defeating. ......... 7

    C.  Plaintiffs Fail to Plead Specific Facts or Theories to Support a
        Claim for Breach of Duty of Good Faith and Fair Dealing. .................. 8

III. PLAINTIFFS' FRAUD COUNT SHOULD BE DISMISSED. ....................................... 10

    A.  Merely Tacking On a Legally-Unsupported Claim for Punitive
        Damages Does Not Transform a Breach of Oral Contract Claim
        into One for Fraud. ............................................................................. 10

    B.  Claims of Fraud in the Inducement Do Not Provide an Exception
        to the Rule Requiring Allegations of Separate Tortious Conduct. ........ 12

    C.  Because the Oral Contracts Plaintiffs Cite Are Also the Supposed
        Misrepresentations Upon Which Their Fraud Count Depends,
        Plaintiffs' Claim Should Be Dismissed Pursuant to *Regency*. ............ 13

IV. PLAINTIFFS' INSISTENCE THAT THEY ALLEGED SUFFICIENT FACTS TO STATE
    A PLAUSIBLE CLAIM FOR UNJUST ENRICHMENT IS INCORRECT. ........................ 15

i

V.      PLAINTIFFS' RESPONSE FAILS TO EXPLAIN HOW THE GAINSHARING
        BONUSES IN THIS CASE QUALIFY AS WAGES. .................................................................. 16

VI.     PLAINTIFFS OFFER NO EXPLANATION AS TO HOW THIS CASE IMPLICATES
        THE D.C. MINIMUM WAGE ACT ...................................................................................... 19

VII.    PLAINTIFFS LACK STANDING TO ASSERT INDIVIDUAL CLAIMS ....................................... 20

VIII.   PLAINTIFFS LACK STANDING TO ASSERT CLAIMS ARISING UNDER LAWS OF
        STATES IN WHICH THEY NEITHER RESIDE NOR WORKED. ................................................ 21

CONCLUSION ........................................................................................................................ 24

*AUS 536698497v6*

# TABLE OF AUTHORITIES

**Cases**

*Albrecht v. Comm. on Emp. Benefits of Fed. Reserve Emp. Benefits Sys.*,
  357 F.3d 62 (D.C. Cir. 2004) ................................................................................................16

*Alkanani v. Aegis*,
  976 F. Supp. 2d 13 (D.D.C. 2014) ...........................................................................................2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................6, 7, 9

*Barros v. GEICO, Inc.*,
  79 F. Supp. 3d 32 (D.D.C. 2015) ........................................................................................6, 7

*Bridgestone/Firestone v. Recovery Credit Servs., Inc.*,
  98 F.3d 13 (2d Cir. 1996)......................................................................................................11

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*,
  137 S. Ct. 1773 (Jun. 19, 2017) ....................................................................................2, 3, 4, 5

*Chambers v. NASA Fed. Cred. Union*,
  222 F. Supp. 3d 1 at 13 (D.D.C. 2016) ...................................................................................9

*Choharis v. State Farm*,
  961 A.2d 1080 (D.C. 2008) ..................................................................................................10

*Coen v. Semgroup Energy Partners*,
  310 P.3d 657 (Okla. Civ. App. No. 4, 2013) ..................................................................17, 18

*Copperweld Corp. v. Independence Tube Corp.*,
  467 U.S. 752 (1984)................................................................................................................2

*DeBay v. Wild Oats Mkt., Inc.*,
  260 P.3d 700 (Or. App. 2011)..................................................................................................1

*Dooley v. Metro. Jewish Health Sys.*,
  No. 02-CV-4640, 2003 WL 22171876, at *10 (E.D.N.Y. July 30, 2003)..............................12

*Dorsey v. Jacobson Holman, PLLC*.
  756 F. Supp. 2d 30 (D.D.C. 2010) ........................................................................................18

*Easter v. American W. Fin.*,
  381 F.3d 948 (9th Cir. 2004) ................................................................................................22

*Eat Right Foods, Ltd. v. Whole Foods Mkt., Inc.*,
  No. C13-2174, 2014 U.S. Dist. LEXIS 189022 (W.D. Wash. Sept. 15, 2014) ........................1

*Excalibur Sys., Inc. v. Aerotech*,
  No. 98-cv-1931, 1999 WL 1281496 (E.D.N.Y. Dec. 30, 1999)......................................11, 12

*FTC v. Whole Foods Mkt. Inc.*,
  No. 1:07-cv-01021-PLF ..........................................................................................................2

iii

*Fuentes-Fernandez v. Corvus*,
  174 F. Supp. 3d 378 (D.D.C. 2016) ...................................................................12

*In re G-Fees Antitrust Litig.*,
  584 F. Supp. 2d 26 (D.D.C. 2008) ..........................................................21, 23, 24

*Harrigan v. Yang*,
  168 F. Supp. 3d 25 (D.D.C. 2016) .................................................................20, 21

*Hinkle v. Continental Motors*,
  ___ F. Supp. 3d ___; 2017 WL 3333120 (M.D. Fla. July 21, 2017) .......................4

*John v. Whole Foods*,
  858 F.3d 732 (2d Cir. 2017) ................................................................................21

*Jordan v. Bayer*,
  No. 4:17-CV-865, 2017 WL 3006993 (E.D. Mo. July 14, 2017) ............................4

*Khatib v. All Bankshares Corp.*,
  846 F. Supp. 2d 18 (D.D.C. 2012) .........................................................................1

*Lefkowitz v. Reissman*,
  No. 12-8703, 2014 WL 825410 (S.D.N.Y. March 7, 2014) ..................................13

*Livnat v. Palestinian Auth.*,
  581 F.3d 45 (D.C. Cir. 2017) .................................................................................4

*Logan v. LaSalle Bank Nat'l Ass'n*,
  80 A.3d 1014 (D.C. 2013) .....................................................................................9

*In re McCormick & Co.*,
  217 F. Supp. 3d 124 (D.D.C. 2016) ......................................................................23

*Medex v. McCabe*,
  372 Md. 28 (Md. 2002) ........................................................................................17

*U.S. ex rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co.*,
  81 F.3d 240 (D.C. Cir. 1996) ...............................................................................15

*Mountain States Legal Found. v. Bush*,
  306 F.3d 1132 (D.C. Cir. 2002) .............................................................................6

*N. Trade v. Guinness Bass Imp. Co.*,
  No. Civ. 303-CV-01892, 2005 WL 1048083 (D. Conn. May 3, 2005) .................10

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012) ................................................................................23

*Nissho-Iwai Co., Ltd. v. Occidental*,
  729 F.2d 1530 (5th Cir. 1984) .......................................................................12, 14

*Norment v. Travelers*,
  505 F. Supp. 2d 97 (D.D.C. 2007) ........................................................................11

*One on One Basketball v. Glob. Payments Direct, Inc.*,
  38 F. Supp. 3d 44 (D.D.C. 2014) ...........................................................................8

iv

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815, 119 S.Ct. 2295 (1999)....................................................................................22

*In re Packaged Ice Antitrust Litig.*,
   779 F. Supp. 2d 642 (E.D. Mich. 2011)........................................................................21, 23

*Papasan v. Allain*,
   478 U.S. 265 (1986)..........................................................................................................6

*Parks v. Dick's Sporting Goods, Inc.*,
   No. 05-CV-6590, 2006 WL 1704477 (W.D.N.Y. June 15, 2006)........................................22

*Paul v. Howard Univ.*,
   754 A.2d 297 (D.C. 2000) ...............................................................................................9

*Perles v. Kagy*,
   473 F.3d 1244 (D.C. Cir. 2007).......................................................................................7, 8

*Phillips Petro. Co. v. Shutts*,
   472 U.S. 797 (1985)..........................................................................................................3

*Pleitz v. Carney*,
   594 F. Supp. 2d 47 (D.D.C. 2009)....................................................................................19

*Regency Communications, Inc. v. Cleartel Communications, Inc.*,
   160 F. Supp. 2d 36 (D.D.C. 2001) ...............................................................................14, 15

*Rivera v. Wyeth-Ayerst Laboratories*,
   283 F.3d 315 (5th Cir. 2002) ...........................................................................................22

*Saleemi v. Pencom Sys., Inc.*,
   No. 99-cv-667, 2000 WL 640647, at *4-5 (S.D.N.Y. May 17, 2000)...................................11

*Saleemi v. Pencom Systems, Inc.*,
   No. 99-cv-667, 2000 WL 640647 (S.D.N.Y. May 17, 2000) .................................................12

*Simpson v. Fireman's Fund Ins. Co.*,
   231 F.R.D. 391 (N.D.Cal. 2005).......................................................................................23

*Skripchenko v. VIRXSYS Corp.*,
   No. TDC-13-0004, 2014 WL 4826788 (D. Md. Sept. 26, 2014)..........................................17

*Srour v. Barnes*,
   670 F. Supp. 18 (D.D.C. 1987) ........................................................................................10

*Truelove v. Ne. Capital & Advisory, Inc.*,
   738 N.E.2d 770 (N.Y. 2000).............................................................................................17

*United States v. K Kellogg Brown & Root Servs., Inc.*,
   800 F. Supp. 2d 143 (D.D.C. 2011) .................................................................................16

*Vasquez v. Whole Foods Market, Inc., et al.*,
   No. 1:17-cv-00112-APM .................................................................................................24

*In re Wellbutrin XL Antitrust Litig.*,
   260 F.R.D. 143 (E.D. Pa. 2009)....................................................................................21, 22

v

*Whitmore v. Arkansas*,
495 U.S. 149 (1990)....................................................................................20

*In Re Whole Foods Mkt. Grp., Inc. Overcharging Litig.*,
167 F. Supp. 3d 524 (S.D.N.Y. 2016)..........................................................21

*Winspisinger v. Watson*,
628 F.2d 133 (D.C. Cir. 1980)......................................................................20

**Statutes**

40 Okla. Stat. § 165.1(4)....................................................................................17

28 U.S.C. § 1332(d)..............................................................................................5

28 U.S.C. § 1332(d)(4)(A)....................................................................................5

28 U.S.C. § 1453...................................................................................................5

28 U.S.C. §§ 1711–15...........................................................................................5

D.C. Code § 32-1001..........................................................................................20

D.C. Code § 32-1008..........................................................................................19

D.C. Code § 32-1008(a)......................................................................................20

D.C. Code § 32-1008(b).....................................................................................20

D.C. Code § 32-1301(3)......................................................................................17

Md. Lab. & Emp't Code § 3-501(c)(1)..............................................................17

**Other Authorities**

1 McLaughlin on Class Actions § 4:28 nn.91–94 (13th ed. 2016)...............................24

*AUS 536698497v6*

**ARGUMENT**

## I.   PLAINTIFFS FAIL TO PROVIDE ANY MEANINGFUL BASIS FOR EXERCISING PERSONAL JURISDICTION OVER WFMI OR CLAIMS BROUGHT BY OUT-OF-STATE PLAINTIFFS.

### A.   Plaintiffs' Cut-and-Pasted Arguments From Previous Briefings Do Not Support the Exercise of Personal Jurisdiction Over WFMI.

After three pleadings, three motions to dismiss, and multiple briefs, Plaintiffs still offer no basis for exercising personal jurisdiction over WFMI.  Their latest Response recycles the same distorted facts and unpled legal theories from previous briefings.  Accordingly, Defendants incorporate by reference arguments they have previously made concerning Plaintiffs' (a) misreading of Defendant WFMI's SEC filings, which omit and ignore those filings' references to WFMI "and its subsidiaries,"[1] *see* Reply Br. [DKT 20] at 2-4; (b) specious presentation of an un-pled, legally unsupportable alter-ego theory of jurisdiction through their misguided reliance upon statements in which Whole Foods refers to the entire collection of its corporate entities as "we," *see id.* at 4-6; and (c) unfounded request for jurisdictional discovery, *see id.* at 6-7.

### B.   Plaintiffs' Argument that WFMI's Previously Submitted to Suit in the District of Columbia is Not Sufficient to Establish Personal Jurisdiction.

Plaintiffs assert that "in previous litigation in this very Court, [WFMI] has explicitly admitted to owning stores and transacting business in the District of Columbia." Resp. Br. [DKT 32] at 8–9.  Specifically, Plaintiffs note that in its Answer to the FTC Complaint, WFMI

---

[1]   Plaintiffs' distortion of Defendants' statements to support jurisdiction over WFMI has now extended to comments made by WFMI CEO John Mackey.  *See* Resp. Br. [DKT 32] at 7-8.  Like Plaintiffs' arguments centered on WFMI's SEC filings, their reliance on Mackey's frequent use of expressions like "us" and "we" to suggest (a) that WFMI is more than a holding company and (b) that it does business in the District of Columbia is both tired and hollow.  It should fail.  *See Khatib v. All Bankshares Corp.*, 846 F. Supp. 2d 18, 33 (D.D.C. 2012) ("it is generally improper to impute the contacts of a subsidiary to a corporate parent that is a holding company") (collecting cases); *Eat Right Foods, Ltd. v. Whole Foods Mkt., Inc.*, No. C13-2174, 2014 U.S. Dist. LEXIS 189022, at *7–8 (W.D. Wash. Sept. 15, 2014) (holding that operating subsidiary's contacts do not impute to WFMI); *DeBay v. Wild Oats Mkt., Inc.*, 260 P.3d 700, 702 (Or. App. 2011) (same).

1

admitted that Whole Foods operates stores in the District of Columbia and transact business in the District.  *Id.* (quoting *FTC v. Whole Foods Mkt. Inc.*, No. 1:07-cv-01021-PLF), WFMI Answer ¶¶ 2, 10)).

But in the context of antitrust laws—like the above FTC suit—a parent company and its wholly owned subsidiaries are treated as a single entity.  *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984).  Thus, WFMI could not have answered the above FTC antitrust suit by saying that only WFMI's subsidiaries actually operate stores in the District.

More importantly, this Court has specifically rejected the argument that a party's previous consent to suit in the District of Columbia creates or supports specific jurisdiction over that party in the future.  *See Alkanani v. Aegis*, 976 F. Supp. 2d 13, 37 (D.D.C. 2014).  In *Alkanani*, the defendant had previously filed a suit in the District against an unrelated party, and the plaintiff asserted that previous consent to the court's jurisdiction supported a finding of minimum contacts over the contractor.  This Court rejected Plaintiffs' argument that "consent[] to the court's jurisdiction in another matter . . . somehow prevents [the company] from objecting to exercise of personal jurisdiction with respect to the instant claim."  *Id.*

After three rounds of pleadings, it is apparent that Plaintiffs have no meaningful argument to establish personal jurisdiction over WFMI.  WFMI should be dismissed.

**C.    The Out-of-State Plaintiffs in this Case are Indistinguishable from Those in *Bristol-Myers*; the Court Lacks Personal Jurisdiction Over Those Plaintiffs' Claims.**

In *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (Jun. 19, 2017), the Supreme Court recently held that specific jurisdiction must be established as to each plaintiff's separate claim.  Motion to Dismiss at 12-13.  Specifically, the Court dismissed hundreds of out-of-state plaintiffs from a California lawsuit because those foreign plaintiffs neither alleged that they suffered any injury in California nor alleged California

2

contacts connecting the defendant's actions to the plaintiffs' claims. *See Bristol-Myers*, 137 S. Ct. at 1174. The same applies here: only some of the Plaintiffs allege that they lived or worked for Whole Foods in D.C.; others have not alleged any facts to tie their alleged injury to this jurisdiction. *See* Motion to Dismiss at 12 (identifying allegations relevant to where each plaintiff lived and worked). Thus, these out-of-state Plaintiffs have failed to allege facts sufficient to demonstrate personal jurisdiction over their claims in the District. The same is true for the claims of absent class members in other states.

In their response, Plaintiffs do not argue that the nonresident Plaintiffs' claims are connected in any way to the District. Instead, they aver that *Bristol-Myers* does not apply because this case (a) is a multi-state class action, not a multi-state mass tort, and (b) is now in federal, rather than state court. Resp. Br. [DKT 32] at 12–14. Both arguments fail.

First, Plaintiffs assert the fact that this is a class action "is an important distinction" because "'the class action was an invention in equity to enable it to proceed to a decree in suits where the number of those interested in the litigation was too great to permit joinder.'" Resp. Br. [DKT 32] at 13 (quoting *Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 808 (1985)). Of course, the claims in *Bristol-Myers* involved thousands of individual plaintiffs, and the reasoning of that case relates to the absence of contacts of the non-resident plaintiffs to the forum state. This situation of out of state or absent class members is no different. Plaintiffs' contention that class actions are excused from personal-jurisdiction analysis merely because they involve large numbers of plaintiffs finds no support.[2]

Moreover, Plaintiffs' concern that applying *Bristol-Myers* "would effectively eviscerate all multi-state class actions" articulates the same parade-of-horribles that was considered and

---

[2] Indeed, the *Phillips Petroleum* opinion Plaintiffs cite merely discusses the purpose of class actions; it does not imply that the class-action vehicle changes the personal jurisdiction analysis.

rejected by the *Bristol-Myers* Court.  As the Court noted, the decision "does not prevent the California and out-of-state plaintiffs from joining in a consolidated action" in a state with *general* jurisdiction over the defendant, nor did the opinion preclude plaintiffs in an individual state from suing in their home state.  *Bristol-Myers*, 137 S. Ct. at 1783–84.  Thus, as the Court explained, the practical convenience of conducting nationwide mass torts in a single forum does not undo the constitutional requirement for personal jurisdiction in that forum.

Similarly, Plaintiffs' claim that *Bristol-Myers* should not be applied merely because this case is in federal court, rather than state court, is of no moment. Resp. Br. [DKT 32] at 14. Plaintiffs emphasize that *Bristol-Myers* itself "leave[s] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Bristol-Myers*, 137 S. Ct. at 1783.  However, neither *Bristol-Myers* nor any case Whole Foods could find that follows *Bristol-Myers* indicates that the personal-jurisdiction analysis is somehow different between state courts and federal courts.  Furthermore, the D.C. Circuit has specifically rejected the argument that the Fifth Amendment applies some lesser personal-jurisdiction standard to federal courts than the Fourteenth Amendment does to state courts. *Livnat v. Palestinian Auth.*, 581 F.3d 45, 54–55 (D.C. Cir. 2017).  Indeed, multiple federal courts have already applied *Bristol-Myers* to dismiss the claims of out-of-state plaintiffs with no connection to the forum state.  *See, e.g., Hinkle v. Continental Motors*, ___ F. Supp. 3d ___, 2017 WL 3333120, at *5, 11 (M.D. Fla. July 21, 2017) (dismissing federal claims of out-of-state plaintiffs for lack of personal jurisdiction)*; Jordan v. Bayer*, No. 4:17-CV-865, 2017 WL 3006993, at *4 (E.D. Mo. July 14, 2017) (same).

Plaintiffs' only explanation for why *Bristol-Myers* should not apply to federal courts is "[g]iven the uniformity of the Federal Rules of Civil Procedure, gone are any potential concerns

4

of forum shopping—there is no discernible benefit to putative class members bringing their cases in this Court **except** for those benefits explicitly endorsed by Rule 23." Resp. Br. [DKT 32] at 14. Plaintiffs offer no authority for this proposition. Furthermore, the *Bristol-Myers* Court specifically noted the requirement of personal jurisdiction cannot be set aside merely because "the defendant would suffer minimal or no inconvenience from being forced to litigate in the forum" or "the forum State is the most convenient location for litigation." *Bristol-Myers,* 137 S. Ct. at 1781. Thus, that the federal rules of civil procedure might make it more convenient to try nationwide cases in federal court does not eliminate the need for personal jurisdiction as to each plaintiff's claim.[3]

Accordingly, this Court should apply *Bristol-Myers* and dismiss all claims brought by nonresident Plaintiffs for want of personal jurisdiction.

## II.   PLAINTIFFS HAVE NOT ALLEGED SUFFICIENT FACTS TO STATE A PLAUSIBLE CLAIM FOR BREACH OF CONTRACT OR BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING.

In their response to Whole Foods' Motion to Dismiss, Plaintiffs claim that they alleged sufficient facts to survive dismissal. Resp. Br. [DKT 32] at 22-26. Of all the iterations of Plaintiffs' breach of contract claim, the latest, relying on oral contracts, is the least tenable. It should be dismissed.

---

[3]  Similarly, Plaintiffs' reference to the Class Action Fairness Act of 2005 offers no support for their argument that this Court has personal jurisdiction over the claims of all Whole Foods employees nationwide. Response Br. at 14 (citing 28 U.S.C. § 1332(d)(4)(A)). Nothing in the Act purports to alter or remove the constitutional personal-jurisdiction requirement. *See* 28 U.S.C. §§ 1332(d), 1453, 1711–15. Indeed, the Act's "home state exception" referenced by Plaintiffs, which allows defendants to remove class actions to federal court without complete diversity of citizenship, only allows a court to evaluate whether two-thirds of the putative class members are citizens of the forum state for purposes of determining diversity.

A.      **Plaintiffs Fail to Plead Sufficient Terms of the Contract and the Nature of the Breach to Support a Claim for Breach of Contract.**

Plaintiffs have only summarily alleged that under the terms of some kind of oral contract, the nature and specifics of which remains unclear, a right to the bonuses existed and that Whole Foods violated this promise.   This is not sufficient to survive a motion to dismiss, despite Plaintiffs' argument in its Opposition.   The court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"   *Mountain States Legal Found. v. Bush*, 306 F.3d 1132, 1137 (D.C. Cir. 2002) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).   "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot survive past motion to dismiss.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This Court recently applied these standards to a similar breach-of-contract case. *Barros v. GEICO, Inc.*, 79 F. Supp. 3d 32 (D.D.C. 2015).[4]   Whole Foods raised this case in its Motion, and Plaintiffs failed to address it.   In *Barros*, the plaintiffs claimed that GEICO violated an insurance contract that "allegedly contained a provision that provided protection from underinsured motorists in the amount of up to $100,000."   *Id.* at 34.   The Court granted GEICO's motion to dismiss.   The Court ruled that the plaintiffs' unsubstantiated allegations that the contract contained an underinsured-motorist provision that GEICO breached constituted "legal conclusions that are not entitled to an assumption of truth."   *Id.* at 36.   "[W]ith the exception to *mere references* to the existence of an underinsured-motorist provision in the amount of $100,000, the Amended Complaint fails to allege a single fact or contract provision that sets

---

[4] In their Response Brief, Plaintiffs only use D.C. substantive law to make their arguments, despite being residents and working in other jurisdictions such as Virginia, Maryland, Oklahoma, and Georgia.   As Whole Foods Memorandum of Law in Support of Their Motion to Dismiss noted, substantive laws of these other jurisdictions are also favorable to Whole Foods' arguments.   Because this brief specifically addresses Plaintiffs' arguments in their Response Brief, however, D.C. substantive law is being used to rebut them.

6

forth GEICO's duty to perform, in which case dismissal is warranted." *Id*. at 37 (emphasis added).

Just as in *Barros*, Plaintiffs here make "mere references to the existence of" an oral provision of an oral contract according to which Whole Foods was allegedly obligated to pay bonuses under the Gainsharing program so long as certain specific, predetermined conditions were met.  SAC at ¶ 108.  Plaintiffs' vague and unsubstantiated statements are mere legal conclusions.  Plaintiffs fail to provide sufficient facts to identify a duty set forth in any alleged oral contract that Whole Foods was required, and failed, to perform.  This is insufficient to satisfy Plaintiffs' pleading burden.  *See Iqbal*, 556 U.S. at 678. As a result, the breach-of-contract claim alleged by Plaintiffs should be dismissed for failure to state a claim.

**B.    Plaintiffs' Evolving Theories Have Now Become Self-Defeating.**

Plaintiffs' contract claims have changed yet again.[5]  But their recent decision to center their contract claims upon oral representations has a fatal consequence.  "To create an enforceable oral contract, both parties must intend to be bound by their oral representations alone" and an alleged oral agreement "does not constitute a contract if either party knows or has reason to know that the other party regards the agreement as incomplete…until the whole has been reduced to written form." *Perles v. Kagy*, 473 F.3d 1244, 1249 (D.C. Cir. 2007).  Of course, Plaintiffs state that the oral representations were material.  *See* Resp. Br. [DKT 32] at 37 (arguing that "the promised Gainsharing payments constituted a material term" of the oral employment contracts").  For Plaintiffs to state a cause of action for breach of oral contract, therefore, they need to plead a mutual meeting of the minds concerning **all** of the contract's material terms, which would have to include details of the Gainsharing program, yet Plaintiffs

---

[5] Tracing Plaintiffs' ever-evolving breach of contract claim brings to mind the irony embedded in Plaintiffs' ad hominem attack in n. 12 of their Response.  That gun kicks as hard as it shoots.

admit they only learned about them once they were actually hired.  *See id.* at ¶¶ 16-17; *see also Perles,* 473 F.3d at 1249.  Without alleging (which they cannot) that Whole Foods considered the gainsharing points to be material, that Plaintiffs considered the gainsharing points to be material, and both parties agreed to those material details, there could be no mutual meeting of the minds, and therefore no claim for breach of contract.

As Plaintiffs acknowledge, it was only *after* they began working for Whole Foods that they learned the specifics of the gainsharing program and the "predetermined goals" their teams needed to achieve.  *See* SAC at ¶¶ 16-17 (noting that the actual details of the gainsharing program were not known to Plaintiffs until they received written Benefits Orientation Materials after accepting employment).  Given that allegation, it cannot be said that the parties regarded their agreement as being complete at the time the Plaintiffs accepted their employment offers via oral agreement.  That belies Plaintiffs' assertions of enforceable oral contracts.  *See One on One Basketball v. Glob. Payments Direct, Inc.*, 38 F. Supp. 3d 44, 50-51 (D.D.C. 2014) (no oral contract where details of the parties' conversation would be explained and expanded upon by a subsequent written instrument).

   C.    **Plaintiffs Fail to Plead Specific Facts or Theories to Support a Claim for Breach of Duty of Good Faith and Fair Dealing.**

In their Response Brief, Plaintiffs continue to insist that they have alleged facts sufficient to withstand a Rule 12(b)(6) dismissal of their claim for breach of duty of good faith and fair dealing.  Resp. Br. [DKT 32] at 24.  These "facts" are that Whole Foods "promised to pay Plaintiffs if Plaintiffs attained certain goals set by Defendants" and that Whole Foods made it "exceptionally difficult for Plaintiffs to meet those goals."  *Id*. at 24-25.  Plaintiffs' response is insufficient.

8

First, in D.C., as well as other jurisdictions from which Plaintiffs hail, employees who work at-will have no contract, and thus there is no duty of good faith and fair dealing.  It is undisputed that Plaintiffs are or were at-will employees.  As a result, Whole Foods does not owe them a duty of good faith and fair dealing.  D.C. law on this point is straightforward:  an at-will employee cannot make a claim for breach of an implied covenant of good faith and fair dealing because "there is no contract to provide a basis for the covenant."  *Paul v. Howard Univ.*, 754 A.2d 297, 310 n.28 (D.C. 2000).

But even if the employees did not have an at-will arrangement and the covenant of good faith and fair dealing applied, Plaintiffs failed to plead sufficient facts to overcome dismissal on Rule 12(b)(6) grounds.  Under D.C. law, "[t]o state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege either bad faith or conduct that is arbitrary or capricious."  *Chambers v. NASA Fed. Cred. Union*, 222 F. Supp. 3d 1 at 13 (D.D.C. 2016) (citations omitted).  If the alleged violators "failed to do something they had no obligation to do" under the contract, a breach-of-covenant claim must be dismissed.  *Id.*

Plaintiffs fail to provide any information regarding their breach of good faith and fair dealing claim, other than conclusory allegations.[6]  They simply allege that Whole Foods told them that they would get a bonus if they met certain targets and then reneged on paying those bonuses.  SAC at ¶¶ 16, 17, 19.  They provide no information beyond "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.  They failed to identify a specific mutually-agreed contractual provision underlying their claim; and failed to allege that Whole Foods acted with the requisite bad faith.  As a result, their claim for breach of the duty of good faith and fair dealing should be dismissed.  *See Logan v. LaSalle*

---

[6] Indeed, they do not cite any legal authority supporting their unjust enrichment arguments, at all.

9

*Bank Nat'l Ass'n*, 80 A.3d 1014 (D.C. 2013) (failure to identify a governing contractual provision or an action constituting a material breach requires dismissal).

## III.   PLAINTIFFS' FRAUD COUNT SHOULD BE DISMISSED.

As discussed in Defendants' Motion to Dismiss, Plaintiffs' fraud count is nothing more than a duplicative claim for breach of contract.  This is especially obvious now that Plaintiffs have centered their claims on oral contracts.  To try and show they have stated causes of action for fraud distinct from their contract claims, Plaintiffs argue (1) that their fraud count is actually one for fraud in the inducement, and (2) that, because they are seeking punitive damages (which they are not entitled to), Plaintiffs' breach of contract claim can be somehow transformed into one for fraud.  Both arguments are without merit.

### A.   Merely Tacking On a Legally-Unsupported Claim for Punitive Damages Does Not Transform a Breach of Oral Contract Claim into One for Fraud.

Plaintiffs point to their demand for punitive damages in an effort to distinguish their fraud count from their claim for breach of contract.  Resp. Brf. [DKT 32] at 38.  But punitive damages do not qualify as "special damages" under the *Bridgestone* doctrine.  *See, e.g., N. Trade v. Guinness Bass Imp. Co.*, No. Civ. 303-CV-01892, 2005 WL 1048083, at *3 n.2 (D. Conn. May 3, 2005).  Plaintiffs thus failed to demonstrate that their fraud claim—whether stated as fraud or fraud-in-the-inducement—is anything other than an impermissibly recycled claim for breach of contract that seeks punitive damages prohibited by law.  *See Choharis v. State Farm,* 961 A.2d 1080, 1089 (D.C. 2008) (requiring a plaintiff to allege a tort that "exist[s] in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship."); *see also Srour v. Barnes*, 670 F. Supp. 18, 21 (D.D.C. 1987) (no punitive damages for breach of contract even where breach was "willful, wanton or malicious").

10

The *Bridgestone* doctrine recognizes the general rule that a plaintiff must allege tortious conduct separate and apart from conduct governed by a contract to state a claim for fraud. The opinion illustrates the three instances where a plaintiff can make that showing. One of those exceptions allows fraud claims brought in conjunction with contract claims to proceed where those claims entail "special damages." *See Bridgestone/Firestone v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). Because all fraud claims *necessarily* allow for punitive damages, it simply cannot be that alleging punitive damages in conjunction with a fraud claim (as every plaintiff has a right to do) entails a claim for "special damages" that creates an exception to the broad, general prohibition. If that were the case, every garden-variety allegation of fraud would fall within the third *Bridgestone* illustration, eviscerating the general rule that fraud and breach of contract must be pled with separate facts.[7] Courts have not accepted Plaintiffs' invitation to swallow *Bridgestone* whole; punitive damages do not qualify as "special damages" for the purposes of the *Bridgestone* doctrine.[8] *See, e.g., Saleemi v. Pencom Sys., Inc.*, No. 99-cv-667, 2000 WL 640647, at *4-5 (S.D.N.Y. May 17, 2000) (punitive damages are not special damages and cannot save claim for fraud where that claim merely restates one for breach of contract); *Excalibur Sys., Inc. v. Aerotech*, No. 98-cv-1931, 1999 WL 1281496, *3 (E.D.N.Y. Dec. 30, 1999) (punitive damages are not special damages under *Bridgestone*). Thus, Plaintiffs' unsupportable request for punitive damages does not transform their breach of contract claim into one for fraud.

---

[7] This is why *Norment v. Travelers*, 505 F. Supp. 2d 97 (D.D.C. 2007), cited by Plaintiffs, Resp. Br. [DKT 32] at 38, was incorrect as a matter of law. Indeed, that case has never been cited as authority for the proposition stated by Plaintiffs.

[8] To hold otherwise would not provide a "reasonable bulwark" against "bad actors." *See* Resp. Br. [DKT 32] at 39. Instead, it would make every breach of contract actionable as fraud.

11

### B.   Claims of Fraud in the Inducement Do Not Provide an Exception to the Rule Requiring Allegations of Separate Tortious Conduct.

Merely recasting a fraud count as one for fraud in the inducement similarly gets Plaintiffs nowhere.  Fraud in the inducement is not an exception to the general rule that plaintiffs must allege tortious conduct separate from the conduct governed by a contract to state a claim for fraud.[9]  *See, e.g., Fuentes-Fernandez v. Corvus*, 174 F. Supp. 3d 378, 393 (D.D.C. 2016) ("FCC's fraud in the inducement claim is indistinguishable from the breach of contract claim except the plaintiff has added a conclusory allegation that Corvus had its fingers crossed when it executed the contract.  But that is not sufficient to avert the dismissal of the claim"); *Dooley v. Metro. Jewish Health Sys.*, No. 02-CV-4640, 2003 WL 22171876, at *10 (E.D.N.Y. July 30, 2003) (dismissing a plaintiff's fraud in the inducement claim where it restated a claim for breach of contract);[10] *Saleemi*, 2000 WL 640647, at *4-5 (S.D.N.Y. May 17, 2000) (intentionally false statement regarding intention to perform contract does not amount to fraud, and alleging punitive damages does not qualify as special damages and cannot save claim); *see also Excalibur*, 1999

---

[9] In disputing this principle, Plaintiffs cite to *Nissho-Iwai Co., Ltd. v. Occidental*, 729 F.2d 1530, 1550 (5th Cir. 1984).  The selective excerpt Plaintiffs provide is misleading, found in *dicta*, and conflicts with Plaintiffs' argument.  The full section of *Nissho-Iwai* is: "Nissho has cited no case, however, in which misrepresentations in the performance of a contract permitted a plaintiff to recover for fraud as well as breach of contract.  Our own research has only turned up cases involving fraud in the inducement or inception of a contract rather than fraud in the performance."  Not only does *Nissho-Iwai* undercut Plaintiffs' claim to punitive damages, it also relies on California state cases from 1974 and 1969, which are not controlling here.  Indeed, in arguing both that they were induced by promises of gainsharing and that gainsharing was a material provision of their oral contracts, themselves, Plaintiffs have rooted their allegations of fraud in "misrepresentations in the performance of a contract," which the *Nissho-Iwai* court rejected.

[10] Plaintiffs believe that *Dooley* somehow supports their claims.  *See* Resp. Br. [DKT 32] at 36-37.  They are wrong.  In *Dooley*, the fraudulent inducements that survived dismissal were extra contractual:  they involved misstatements about the quality of the hospital facility and business opportunities that were not described or promised by Dooley's contract.  *See* 2003 WL 22171876, at *9.  Here, in contrast, not only are the supposed fraudulent inducements not extra contractual (they relate to gainsharing bonuses that Plaintiffs aver were guaranteed by the contracts), but those supposed fraudulent inducements are actually identical to the alleged oral contracts, themselves.

12

WL 1281496, *3 (E.D.N.Y. Dec. 30, 1999) (dismissing fraudulent inducement claim as duplicative of one for breach of contract where the allegations supporting that claim were entirely based on the defendant's duty to perform the contract in the future, and noting that punitive damages do not constitute special damages under *Bridgestone*).  Again, as stated, *supra*, Plaintiffs may not transform their breach of contract claims into ones for fraud.  *See Lefkowitz v. Reissman*, No. 12-8703, 2014 WL 825410, at *5 (S.D.N.Y. March 7, 2014) ("a false promise about future intent to perform a contract" is not enough to constitute a promise extraneous to the contract to give rise to fraud).

      C.      **Because the Oral Contracts Plaintiffs Cite Are Also the Supposed Misrepresentations Upon Which Their Fraud Count Depends, Plaintiffs' Claim Should Be Dismissed Pursuant to *Regency*.**

In their initial Complaint, Plaintiffs suggested that their breach of contract claims were based on implied promises made to them through written materials.  Orig. Compl. [DKT 1] ¶¶ 25-26.  But then, at oral argument, the Court expressed concerns about treating the General Information Guide ("GIG") (and its extensive pre-ambulatory language and disclaimers) as a contract.  Plaintiffs therefore revised their theory, basing it upon alleged oral contracts that they claimed were uniform in nature and entered into by each and every new hire.  *See* SAC [DKT 28] at ¶ 15; *see also id.* at ¶ 32 ("During his interview…Defendants promised to Plaintiff Molock that if he worked for Wholefoods, he would receive an hourly base wage, plus mandatory bonuses under the Gainsharing program described above").  That creates a logical fallacy that Plaintiffs cannot overcome: if their contracts were in the form of oral representations, and their fraud claim relies on those same oral representations, Plaintiffs simultaneously regard those oral representations as both contracts and fraudulent statements that induced Plaintiffs to enter into contracts for employment at Whole Foods.  While a plaintiff is allowed to plead in the alternative, a statement (or even series of statements) cannot serve as both an oral contract and a

13

fraudulent inducement.  Put another way, if a statement is a contract, it cannot also be extraneous to that same contract (*i.e.* to *itself*).  *See, e.g., Regency Communications, Inc. v. Cleartel Communications, Inc*, 160 F. Supp. 2d 36, 41 (D.D.C. 2001) ("there is a general reluctance to allow a claim of fraud to proceed when the fraud contemplated by the plaintiff does not seem to be extraneous to the contract…") (Lamberth, J.); *see also* Resp. Br. [DKT 32] at 36 (admitting that fraud may not lie where the allegations "arise out of the same facts as a breach of contract").  Here, Plaintiffs' contract and fraud claims are impermissibly duplicative, in violation of *Regency.*

In spite of their new focus on oral contracts, Plaintiffs' theory remains that "the terms of the contract and the promise it would be performed enticed us to contract." *See, e.g.* SAC [DKT. 28] at ¶¶ 15-18.  In addition to the fact that even Plaintiffs' own authority contradicts that argument, *see Nisshi-Iwai*, 729 F.2d at 1550 ("Nissho has cited no case, however, in which misrepresentations in the performance of a contract permitted a plaintiff to recover for fraud"), Plaintiffs now have an even bigger problem on their hands.  Assuming there were oral representations made to Plaintiffs, and assuming there were also oral contracts entered into by the parties, Plaintiffs cannot offer any distinction between statements that formed the alleged contracts and statements that were extra contractual.  *Compare* SAC [DKT 28] at ¶ 108 ("Defendants orally contracted to employ each plaintiff.  As consideration for Plaintiffs' labor, Defendants promised (*see* supra, ¶¶ 32-99) to provide each Plaintiff with a compensation package that…included automatic payments under the Gainsharing profit sharing program…"), *with id.* at ¶ 164 ("As set forth above (*see* supra ¶¶ 32-99) over the course of interviewing, hiring, training, and employing each Plaintiff, Defendants…falsely represented to Plaintiffs, and those similarly situated, that they would be paid the mandatory bonuses they earned under the

14

Gainsharing program").  Plaintiffs' inability to make this distinction alone warrants dismissal. *See Regency*, 160 F. Supp. 2d at 41-42 (fraud must include allegations of a tort "separate from the duty to perform under the contract" and "withholding [ ] information…is behavior directly related to the contract" and thus not "collateral or extraneous to" it).

Each of these infirmities provides an independent basis for the Court to dismiss Plaintiffs' fraud count.

## IV.  PLAINTIFFS' INSISTENCE THAT THEY ALLEGED SUFFICIENT FACTS TO STATE A PLAUSIBLE CLAIM FOR UNJUST ENRICHMENT IS INCORRECT.

According to Plaintiffs, simply stating that (1) Plaintiffs conferred benefits on Defendants—by providing labor to come in under budget—and that (2) Defendants unjustly retained these benefits—by keeping financial gains to themselves—should be enough to survive dismissal under Rule 12(b)(6).  Resp. Br. [DKT 32] at 26-28.  They failed, however, to plead that the retention of the conferred benefit by Whole Foods was unjust, and also failed to plead enough facts to support their contention that it is Whole Foods, and not the nine fired employees, that retained the benefit.

Further, Plaintiffs here have not alleged facts to indicate that to the extent Whole Foods retained any benefit of the surplus, it was unjust.  *U.S. ex rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co.,* 81 F.3d 240, 247 (D.C. Cir. 1996) (noting unjust enrichment requires plaintiff to prove more than that he conferred benefit upon defendant).  Here, the facts alleged in the Second Amended Complaint do not establish that Whole Foods retained any benefit from the unpaid gainsharing.  In addition, nothing in the Amended Complaint points to Whole Foods retaining the benefit unjustly, especially given that Plaintiffs were paid wages for their services.

When it comes to the retention of benefits, the facts in the Second Amended Complaint point squarely at the nine store managers who were fired for manipulating the bonus program—

15

and not to Whole Foods—as the recipients of the bonus money. *See* SAC [DKT 28], ¶ 26 (stating that Whole Foods "fired nine store managers in the Mid-Atlantic region *for manipulating a bonus program for their benefit*") (emphasis added). The Second Amended Complaint alleges that after investigating the matter, Whole Foods compensated its employees for bonuses taken by the nine fired store managers. *See, e.g.,* SAC [DKT 28] ¶ 42. This gesture by Whole Foods is the exact opposite of Plaintiffs' unsubstantiated claim that Whole Foods unjustly retained the benefits.

Alternatively, this Court could grant the Motion to Dismiss on the grounds that "[t]here can be no claim for unjust enrichment" when such a claim is based on the terms of a contract. *Albrecht v. Comm. on Emp. Benefits of Fed. Reserve Emp. Benefits Sys.*, 357 F.3d 62, 69 (D.C. Cir. 2004). Plaintiffs allege that an oral contract existed and that violations of its terms caused unjust enrichment. SAC [DKT 28] at ¶¶ 114, 116 ("Under Whole Foods [sic] agreement with Plaintiffs, when the departments in which Plaintiffs worked were under budget, the surplus was to be disbursed to Plaintiffs and their coworkers as a bonus…Because Whole foods retained the budget surplus for its own benefit, rather than pay the budget surplus to its employees as it agreed, Whole Foods unjustly enriched itself at the expense of its employees"). *United States v. Kellogg Brown & Root Servs., Inc.*, 800 F. Supp. 2d 143, 160 (D.D.C. 2011). This argument is fatal to their unjust enrichment claim which is based on the terms of the alleged oral contract.

## V.   PLAINTIFFS' RESPONSE FAILS TO EXPLAIN HOW THE GAINSHARING BONUSES IN THIS CASE QUALIFY AS WAGES.

In its Motion to Dismiss, Whole Foods explained that Counts III through X should be dismissed because, even taken as true, the facts alleged in the Second Amended Complaint do not demonstrate a violation of the District of Columbia Wage Payment Act ("DCWPCA"); the Maryland Wage Payment and Collection Statute ("MWPCS"); or the Oklahoma Protection and

Labor Act ("OPLA") because the gainsharing bonuses at issue in this case do not qualify as "wages."  Resp. Br. [DKT 32] at 28–33.  Plaintiffs' protestations in their Opposition regarding an alleged underpayment of gainsharing bonuses do not, as a matter of law, implicate any of these wage statutes because the gainsharing payments are not wages.  *See, generally*, D.C. CODE § 32-1301(3); MD. LAB. & EMP'T CODE § 3-501(c)(1); 40 OKLA. STAT. § 165.1(4).[11]

Courts have consistently held that when bonuses are determined based on factors other than an individual employee's efforts, they are not "wages" because all of the relevant wage statutes "expressly link earnings to an employee's labor services *personally rendered*."  *Truelove v. Ne. Capital & Advisory, Inc.*, 738 N.E.2d 770, 772 (N.Y. 2000) (discussing New York's substantively identical wage statute); *Cf. Medex v. McCabe,* 372 Md. 28, 36 (Md. 2002) (holding an "incentive fee" constituted a bonus where it was solely contingent upon the employee's individual performance and noting that "[i]n Maryland, not all bonuses constitute wages…where the payments are dependent upon conditions other than the employee's efforts, they lie outside of the definition").  Though Plaintiffs try to take nuanced readings of Defendants' case law supporting this view, they cite to no authority opposing it.[12]

---

[11] In support of its position, Whole Foods cited case law from both Maryland and Oklahoma explaining that an employee bonus does not meet the respective statutory definition of a wage if the bonus is determined by or contingent upon factors other than an individual employee's performance.  *See Skripchenko v. VIRXSYS Corp.*, No. TDC-13-0004, 2014 WL 4826788, at * 6 (D. Md. Sept. 26, 2014); *Coen v. Semgroup Energy Partners*, 310 P.3d 657, 664 (Okla. Civ. App. No. 4, 2013).  The court in *Skripchenko* stated that bonuses "are 'wages' only if they . . . were not dependent on conditions other than the employees' efforts."  *Skripchenko*, 2014 WL 4826788, at *6.  Plaintiffs are correct that the court did not decide whether the bonus at issue there qualified as a wage—there was a question of fact regarding whether the bonus was contingent on factors other than the plaintiff's efforts.  *See* Resp. Br. at 32; *Skripchenko*, 2014 WL 4826788, at *6.  However, the court implicitly found that if the bonus *was* contingent on factors other than the employee's efforts, then the bonus *was not* a wage.  Thus, Plaintiffs' argument that *Skripchenko* was not actually a final judgment is of no moment.

[12] As fully discussed in Whole Foods Motion to Dismiss Plaintiffs' Original Complaint, the rulings in *Truelove*, *Weems*, and *Skripchenko* are persuasive authority because the New York,

17

Plaintiffs' observations on Defendants' authority ignore those cases' relevant principle: "wages" refers to remuneration for individual efforts and achievements solely within an individual's control; bonuses that are dependent on extraneous factors—whether characterized as "incentive fees" or otherwise—fall outside that definition.   Indeed, Plaintiffs' attempts to point out minor distinctions completely ignores the actual rational underlying the courts' holdings in *Skripchenko*, *Coen*, and others.   In each of those cases, the courts held that the underlying bonuses were *not* wages because they were *not* determined based on the individual performance of a single employee, but were dependent on some factor other than an employee's labor services personally rendered.   *Coen*, 310 P.3d at 644.   Thus, as in the case of gainsharing (which depends on the efforts of an entire team and other factors outside an individual's control such as profit margins, absenteeism on the part of colleagues, and the like), if a bonus is determined based on factors other than the ascertainable effort of an individual employee, it is not a wage.   The mere fact that a bonus might also not be a wage if it is discretionary, *see Dorsey v. Jacobson Holman, PLLC.*, 756 F. Supp. 2d 30, 36–37 (D.D.C. 2010), does not change the analysis of the cases above.   Additionally, Plaintiffs do not and cannot plausibly allege that they actually earned any of the bonuses at issue in this case.   *See* SAC at ¶¶ 92-99.   As stated in Defendants' opening brief, "as best as can be gleaned from Plaintiffs' latest Complaint" they might have been on teams that "ran perpetual deficits, and might have never been entitled to any bonuses at all."   *See* Motion to Dismiss [DKT 30-1] at 21.

By comparison, it is undisputed that whether a Whole Foods employee is entitled to a gainsharing payment is based on factors other than the individual employee's performance.

---

Connecticut, and Maryland statutes at issue define "wage" very similarly to the DCWPCA.   *See* WF MTD Orig. Compl. [DKT 9-1] at 27-29.   Therefore, Plaintiffs' avoidance of these opinions merely because they are from other states underscores the weakness of their position.   *See* Resp. Br. [DKT 32] at 30 n.18.

Unlike the profit sharing in *Dorsey*, Whole Foods requires the *team* to have a surplus before any individual employee or that team is entitled to gainsharing.   SAC [DKT 28], ¶ 16.   Thus, Plaintiffs' arguments that gainsharing payments are paid at times other than the end of the year or are calculated using a mathematical formula, although true, are not responsive to Whole Foods' actual argument, or to the authority Whole Foods cites.[13]   Because the facts alleged in the Amended Complaint demonstrate that Gainsharing payments are not determined solely based on an individual employee's labor services rendered, the Gainsharing payments are not wages under the DCWPCA; MWPCS; or OPLA. Counts III through X should be dismissed.

## VI.   PLAINTIFFS OFFER NO EXPLANATION AS TO HOW THIS CASE IMPLICATES THE D.C. MINIMUM WAGE ACT.

In the most conclusory section in their Response, Plaintiffs assert that even though this case does not implicate or relate in any way to whether Whole Foods paid its employees the applicable minimum wage, they somehow still have a valid claim for alleged violation of the D.C. Minimum Wage Act ("DCMWA").   Resp. Br. at 33-34.   Specifically, Plaintiffs assert that section 32-1008 of the DCMWA required Whole Foods to maintain the names, contact information, ages, hourly rate of pay, and hours worked for its employees for a period of three years.   *See* D.C. CODE § 32-1008.   Plaintiffs contend that because the "gainsharing records"— which in no way implicate an employee's hourly pay, total hours worked, or whether Whole Foods pays its employee the required minimum wage—"were falsified," Whole Foods has somehow violated the above provision.   Resp. Br. at 32.

---

[13] Plaintiffs' reliance on *Pleitz v. Carney*, 594 F. Supp. 2d 47 (D.D.C. 2009), adds no weight to their argument.   *See* Resp. Br. at 33.   That case was adjudicated in the context of a default where the defendant never bothered to contest the plaintiffs' claims, and where the only matter presented in that decision related to damages.   Judge Bates *never* made any legal or factual determinations concerning the efficacy of those plaintiffs' claims, and never gave any treatment to whether bonuses like those in the case at bar (*i.e.* that are not determined solely based on an individual employee's labor services rendered) constitute wages for the purposes of District of Columbia law.

19

As explained in Whole Foods' successive  motions to dismiss, and ignored by Plaintiffs in each of their responses, the purpose of Section 32-1008's reporting requirement is to ensure that the Mayor's Office can review an employer's records to ensure that the employer is paying minimum wage.  *See* D.C. CODE §§ 32-1001, 32-1008(a)–(b).  Nothing in Section 32-1008 gives employees like the Plaintiffs the right to access Whole Foods' records; requires that Whole Foods track the bonuses which it pays; or creates a private cause of action for allegedly inaccurate reporting between an employer and the Mayor's office.  Motion to Dismiss at 37–38. Thus, contrary to Plaintiffs' unexplained assertion, nothing in the Second Amended Complaint alleges that Whole Foods in fact violated section 32-1008; that Plaintiffs' are "persons aggrieved" by such an alleged violation; or that the Minimum Wage act creates an omnibus right to sue employers for all disputes regarding employee bonuses, regardless of whether those bonuses implicate the minimum wage.  Count V should be dismissed.

## VII.   PLAINTIFFS LACK STANDING TO ASSERT INDIVIDUAL CLAIMS.

Though Plaintiffs insist otherwise, they have not pled a "concrete and particularized" injury in fact that is more than "conjectural."  That means they have no standing.

As shown in Defendants' opening brief, though Plaintiffs rely on insinuations and rumors of "nationwide" "illegal activity," they never allege they were denied bonuses they actually earned.   As this Court observed in *Yang*, insinuation and speculation are not enough; thus, anything short of an allegation that each Plaintiff actually qualified for and earned a bonus that he or she was  denied  is "simply too conjectural to support an injury-in-fact for the purposes of standing."  *See Harrigan v. Yang*, 168 F. Supp. 3d 25, 33 (D.D.C. 2016) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)); *Winspisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980) (no standing where the court "would have to accept a number of very speculative inferences and assumptions…to connect the alleged injury with the [challenged conduct].").

20

That Defendants sought to "buy peace" with Plaintiffs, as the SAC alleges, *see* SAC [DKT 28] at ¶ 42, is by no means an admission of liability, much less evidence of a "concrete and particularized" injury in fact that can overcome the deficiencies of Plaintiffs' pleading.[14]

## VIII. PLAINTIFFS LACK STANDING TO ASSERT CLAIMS ARISING UNDER LAWS OF STATES IN WHICH THEY NEITHER RESIDE NOR WORKED.

Contrary to Plaintiffs' contention, numerous courts have held that where named plaintiffs seek to represent classes and assert state-law claims arising under the laws of states where the named plaintiffs do not reside, the named plaintiffs must have standing for every claim they raise. *See, e.g.*, *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 36 (D.D.C. 2008) ("[A] case or controversy requires a specific, identified plaintiff who can establish a personal injury under the claim asserted."); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 151–55 (E.D. Pa. 2009); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 653–59 (E.D. Mich. 2011) (collecting cases). That means that these named Plaintiffs lack standing to assert claims arising under the laws of states in which they neither worked nor reside.

---

[14] Plaintiffs' reliance on *John v. Whole Foods*, 858 F.3d 732 (2d Cir. 2017) is unavailing. There, a customer sued WFMG in the wake of a press release by the New York City  Dept. of Consumer Affairs alleging that 89% of the packages of pre-packaged foods it sampled on inspections at certain Whole Foods' stores in New York City bore incorrect weights on the labels.   The District Court dismissed the Complaint for lack of standing.   In reversing, the Second Circuit did not require the complaint to "identify a specific food purchase as to which Whole Foods overcharged John" and allowed the claim to proceed based on a general description in the city agency's press release of alleged "pervasive overcharging of pre-packaged food." *See id.* at 734. Although the agency press release at issue in *John* was short on details and did not provide any basis of a methodologically reliable finding of an across-the-board practice of incorrect labeling, *see id.* at 737, and while the agency subsequently acknowledged it "did not find any evidence of systematic or intentional misconduct by any individual across the Northeast region," *see In re Whole Foods Mkt. Grp., Inc. Overcharging Litig.*, 167 F. Supp. 3d 524, 529 (S.D.N.Y. 2016), the Court of Appeals' opinion found the agency's allegation of a "systemic" practice, supported by the assertion that 89% of tested packages were misweighed, to suffice for purposes of standing. *John*, 585 F.3d at 737. That is a far cry from the factually unsubstantiated and conclusory allegations in the SAC that Plaintiffs were entitled to gainsharing payments. The SAC does not make any fact-based allegation that would support the inference that these Plaintiffs were entitled to gainsharing payments they did not receive.   And the SAC's allegations necessarily require the sort of speculation this Court rejected in *Yang.*

21

Plaintiffs' contention that the Court should not rule on Defendants' standing application until after it rules on a yet-to-be-filed motion for class certification should be rejected. *See* Resp. Br. [DKT 32] at 19-20. Although in certain circumstances class certification issues can be addressed before Article III concerns, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831, 119 S.Ct. 2295 (1999), in class actions generally, the issue of standing should be decided first. *Ortiz v. Fibreboard* created only "a limited exception for suits in which the class certification issues are 'logically antecedent' to the existence of any Article III issues." *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315, 319, n. 6 (5th Cir. 2002). Indeed, "[a]lthough the court in *Fibreboard* examined class issues before the question of Article III standing, it did so in the very specific situation of a mandatory global settlement class. *Fibreboard* does not require courts to consider class certification before standing."[15] *Easter v. American W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004).

Here, "[a] ruling as to the named plaintiffs' standing depends in no way upon the standing of proposed class members. Thus, the named plaintiffs' standing is not 'logically antecedent' to the issue of class certification." *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. at 153–54. Accordingly, there is no need to postpone an inquiry into the threshold issue of whether Plaintiffs have standing to assert class claims arising under the laws of states in which the named plaintiffs neither reside nor worked.[16]

---

[15] *Ortiz v. Fibreboard* involved the unique circumstance of a global settlement of asbestos claims where unnamed class members included "exposure only" plaintiffs who had not yet been injured.

[16] *See Parks v. Dick's Sporting Goods, Inc.*, No. 05-CV-6590, 2006 WL 1704477, at *2-3 (W.D.N.Y. June 15, 2006) (finding in a suit brought under the Fair Labor Standards Act, New York State Labor Law, and the laws of the other States in which the defendant does business, that the court could "properly consider the motion to dismiss now, as opposed to waiting until after ruling on a motion for class certification" and further "that the plaintiff, Daniel Parks, lacks standing to assert state-law claims arising under the laws of states other than New York, since he was never employed by defendant anywhere other than New York.")

22

Additionally, Plaintiffs assert that "a plaintiff does not lack standing to bring a multistate class action so long as the 'same set of concerns' is raised by the claims under the various state laws." Resp. Br. [DKT 32] at 20.  But that is not the applicable test.   Plaintiffs rely mistakenly on *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) for this proposition.  In *NECA-IBEW*, the plaintiffs filed a securities class action and the court found that the plaintiff, a holder of mortgage-backed securities, had standing to assert Securities Act class claims on behalf of other purchasers of similar mortgage certificates.   In other words, in NECA-IBEW, all the claims arose under the federal securities laws.  *Id.* at 149. Significantly, unlike the case before this Court, in *NECA-IBEW* there were no issues about which state law applied, even where the prospective plaintiffs purchased the certificates in different states.[17]   And the standing issue presented here, namely, whether a plaintiff who resides in one state can assert a claim under the law of a different state in which he neither resides nor has worked, was not presented.

It is undisputed that Plaintiffs cannot show that they personally suffered an injury under the laws of any state outside of the state where they worked or lived, or that an award under any other state's law could somehow provide them relief.   Thus, the nationwide class allegations should be dismissed.[18]  *See In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d at 46; *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d at 657.[19]

---

[17] Notably, in *NECA-IBEW* the court held that the plaintiff did *not* have standing to assert claims on behalf of purchasers of certificates that were backed by mortgages from different lenders than those that originated mortgages backing plaintiff's certificates.  *NECA-IBEW*, 693 F.3d at 164.

[18] Plaintiffs' reliance on *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D.Cal. 2005), *see* Resp. Br. at 19, is also misplaced.  In *Simpson,* the court was deciding a motion for class certification, not a pre-answer motion to dismiss and did not examine whether the plaintiffs had standing to assert their claims on behalf of the class.

[19] In relying on *In re McCormick & Co.*, 217 F. Supp. 3d 124 (D.D.C. 2016), Plaintiffs are conflating the issue of predominance with the issue of standing.  What is more, the McCormick

23

Additionally, Plaintiffs attempt to allege a nationwide class by contending that all Whole Foods workers are employees of Whole Foods Market, Inc.  Plaintiffs, however, continue to ignore the facts that Whole Foods Market, Inc. is a holding company without any employees. Plaintiffs similarly ignore the fact that several Plaintiffs work and live in parts of the country— such as Oklahoma—where Whole Foods Market Group, Inc. does not operate.[20]

Furthermore, Plaintiffs' assertion that they have pled sufficient facts to support nationwide class allegations also fails.  Plaintiffs base their nationwide class claims on the allegations of the nine store managers who asserted in a separate lawsuit, *Vasquez v. Whole Foods Market, Inc., et al.,* No. 1:17-cv-00112-APM, that they were fired for wrongfully manipulating the Gainsharing program.  These store managers worked only in the District of Columbia, Maryland and Virginia and therefore have no basis to assert claims beyond those states.  Notably, these individuals were the wrongdoers who manipulated the Gainsharing program for their own benefit.  For Plaintiffs to rely on the legal transgressors to support their allegations simply demonstrates the deficiency of their claims.  Accordingly, Plaintiffs' reliance on the allegations in the store managers' lawsuit is inadequate and demonstrates that Plaintiffs have alleged no set of facts to support a nationwide class action.

## CONCLUSION

For the foregoing reasons and those articulated in Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, this Court should dismiss Plaintiffs' suit in its entirety.

---

court appeared to decide the standing issue on the grounds that, in the interests of judicial economy, the question of whether named plaintiffs in a class action could raise claims on behalf of those injured in other states should be determined at the class certification stage rather than on a preliminary motion based on standing.  *In G-Fees Antitrust Litig.* and the weight of authority are to the contrary, and address the issue of standing first.  *See also* 1 McLaughlin on Class Actions § 4:28 nn.91–94 (13th ed. 2016).

[20] Contrary to Plaintiffs' selective reading of SEC filings, Defendant Whole Foods Market Group, Inc. only operates stores in 27 states.  Defendant WFMI, of course, does not operate any stores at all.

Respectfully Submitted,

**GREENBERG TRAURIG, LLP**

By:  */s/ Gregory J. Casas*
Gregory J. Casas
  Bar No. 455329
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone:  512.320.7200
Facsimile:  512.320.7210

John H. Hempfling, II
(Admitted *Pro Hac Vice*)
Texas State Bar No.  231788
Sr. Global Litigation Counsel
Whole Foods Market Central Office
550 Bowie Street
Austin, Texas  78703
Tel:  512.542.0213
John.Hempfling@wholefoods.com

David Sellinger
  Bar No. 282780
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Telephone:  973.360.7900
Facsimile:  973.301.8410

*Attorneys for Defendants Whole Foods Market,
Inc. and Whole Foods Market Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically filed with the Court and that counsel of record, who are deemed to have consented to electronic service are being served this 1st day of September, 2017, via the Court's CM/ECF System.

*/s/ Gregory J. Casas*
*Gregory J. Casas*

25