# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MICHAEL MOLOCK, et al.,

        Plaintiffs,

    v.

WHOLE FOODS MARKET, INC.,

        Defendant.

Case No. 1:16-cv-02483-APM

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF ITS MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL

Pursuant to 28 U.S.C. § 1292(b) and Federal Rule Appellate Procedure 5(a)(3), Defendant Whole Foods Market Group, Inc. ("Whole Foods") respectfully moves the Court for an order certifying an issue for interlocutory appeal. Specifically, Whole Foods requests to take an interlocutory appeal from that part of the Court's March 15, 2018 Order holding that *Bristol-Myers Squibb v. Superior Court of California*, 137 S. Ct. 1773 (2017), does not apply to putative nationwide class actions, and therefore denying Whole Foods' motion to dismiss the non-resident class members for want of personal jurisdiction. *See* Mem. Op. & Order [Dkt. 34] at 14. Whether *Bristol-Myers* applies to putative nationwide class actions is an important, emerging question of law that presents a "substantial ground for difference of opinion" which, if decided in Whole Foods' favor, could greatly reduce the scope of proposed class discovery in this case, thereby conserving the parties' resources and materially advancing the resolution of this case. *See* 28 U.S.C. § 1292(b).

## BACKGROUND

In its March 15, 2018, Memorandum Opinion and Order (the "Appealed Order"), the Court ruled that the claims of Plaintiffs Molock, Kuczor, Fuentes, Milner and Pace, all of whom allege injuries occurring in the District of Columbia, were subject to the Court's personal jurisdiction.  *See* Appealed Order [Dkt. 34] at 11.  In that same order, the Court dismissed claims brought by Plaintiffs Bowens and Strickland, residents of Maryland and Oklahoma, who alleged injuries occurring in those states.  *Id.* at 12-13.  In so doing, the Court observed that Defendant is a Texas corporation with a principal place of business in Austin, Texas, and thus, the Court lacked general personal jurisdiction over Defendant.  *Id.* at 8, 13-14.  Consequently, the Court found that it did not maintain specific personal jurisdiction over those named out-of-state plaintiffs' claims.  *See id.* at 10–11 (citing *Bristol-Myers*, 137 S. Ct. at 1777–78).

As relevant here, however, the Court rejected Defendant's argument that the recent *Bristol-Myers* decision applies with equal force to the un-named, out-of-state, putative class members' claims.  *Id.* at 13–14.  It is undisputed that, like Bowens and Strickland, these non-resident class members' alleged injuries have no connection to this forum.  However, in making its determination, the Court cited recent authority from sister courts in Georgia, California, and Louisiana holding, *inter alia*, that the unique features of the class certification process protect a defendant's due process rights and, therefore, that *Bristol-Myers* does not apply to class actions. *See* Appealed Order [Dkt. 34] at 14 ("In light of these key distinctions, and because Defendants have not presented persuasive authority to the contrary, the court joins other courts that have concluded that *Bristol-Myers* does not require a court to assess personal jurisdiction with regard to all non-resident putative class members.").

2

As a direct consequence of the Court's interpretation of *Bristol-Myers*, Defendant anticipates that Plaintiffs will seek nation-wide discovery in this matter. That much is clear based on the parties' recent meet-and-confer regarding the Initial Scheduling Conference in this action and in the *Vasquez* case.  That discovery will involve the costly and time-consuming collection and review of tens of millions of complicated time transfer files, emails, and labor records in nearly five-hundred Whole Foods stores across the entire country.  The process of collecting, evaluating, producing, and making sense of those records may take years even with concerted discovery by teams of legal professionals.   Furthermore, given that this case only involves state-law causes of action, both the parties and the Court face the burden of analyzing every discovery dispute, deposition request, and motion practice through the prism of 43 separate state laws.

While Plaintiffs are entitled to litigate their alleged claims, the issue of whether due process supports compelling Defendant to defend those nationwide claims in the District of Columbia, despite the fact that the non-resident class members would not otherwise be able to pursue those claims here on their own, turns on an unsettled question of law.  Indeed, the question of whether *Bristol-Myers* is applicable to class-action lawsuits has engendered disagreement among courts employing their best efforts to make sense of a Supreme Court decision that, by one Justice's own acknowledgement, "did  not confront" the question the courts are now tasked with answering. *See Bristol-Myers Squibb Co.,* 137 S. Ct. at 1789 n. 4 (Sotomayor, J., dissenting).

Facing the looming, massive undertaking of anticipated nation-wide discovery that "threatens to endure for several years," *see APCC Servs., Inc. v. Sprint Comms. Co.*, 297 F. Supp. 2d 90, 96 (D.D.C. 2003), both the parties and the Court have an interest in resolving this continuing disagreement over *Bristol-Myers*'s scope. And the problem of that uncertainty

extends beyond the present dispute; its ultimate resolution will have "far reaching consequences," affecting every putative class action matter brought in this Court. *See Un. Mine Workers of Am. 1974 Pension Trust v. Pittston Co.*, 793 F. Supp. 339, 347 (D.D.C. 1992). Given that discovery in this matter can proceed within the five stores over which the Court plainly enjoys jurisdiction and no stay is necessary,[1] there is no better opportunity than now to afford the D.C. Circuit the chance to resolve this important question.

## ARGUMENT

### THIS COURT SHOULD CERTIFY ITS
### MARCH 15, 2018 ORDER FOR INTERLOCUTORY APPEAL

Section 1292(b) of 28 U.S.C. affords an appellate court discretion to review any interlocutory order that a district court has certified for review. That section reads:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing such order.

28 U.S.C. § 1292(b). A district court may amend its order to include such a designation in response to a party's motion where, as here, these criteria are satisfied. *See* Fed. R. App. P. 5(a)(3). A party's request for such a designation does not serve to impugn the district court's order or the reasoning employed within it; instead such a request recognizes that the three statutory criteria are met. *See Philipp v. Fed. Repub. of Ger.,* 253 F. Supp. 3d 84, 88 (D.D.C. 2017) ("While it is the Court's view that the prior decision is correct, the Court finds that all three requirements to certify a case for interlocutory appeal are satisfied. As such . . . the Court shall certify its order . . . .") (Kollar-Kotelly, J.); *Sardinia v. Dellwood Foods, Inc.*, No. 94-cv-

---

[1] As discussed, *infra*, because coordinated discovery with the *Vasquez* matter will conserve resources, discovery can also proceed in Defendant's Maryland and Virginia stores.

4

5458, 1995 WL 710205, at *1 (S.D.N.Y. Dec. 1, 1995) ("Confident though I am that the October 30th order is wholly correct, the issue to be certified satisfies the criteria set out in 28 U.S.C. 1292(b).  As such, defendant's motion is granted.") (Preska, J.).

Because the issue of whether *Bristol-Myers* applies to putative nationwide class actions involves (1) a controlling question of law (2) for which there is already a difference of opinion among the courts having had the opportunity to consider it, and (3) resolution of this issue would materially alter the entire course and scope of this litigation, Defendant respectfully request that the Court grant this motion and certify this issue for interlocutory review.  *See Tidewater Oil Co. v. United States*, 409 U.S. 151, 179 (1972) (observing the "contemporary view that interlocutory appeals involving important and controlling questions of law are a useful means of expediting litigation.").

  1.  __The Court's Decision Turns on a Controlling Question of Law.__

A question of law is "controlling" and thus suitable for interlocutory review when it stands to have a significant impact on the action and can determine "the future course of the litigation."  *See Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002); *see also* 16 Charles Alan Wright, et al, FEDERAL PRACTICE & PROCEDURE § 3930, at 426 (2d ed 1996) ("a question is controlling, even though its disposition may not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants").  Matters centering on the Court's jurisdiction are "controlling."  *See APCC Servs, Inc.,* 297 F. Supp. 2d at 96.

In this case, whether *Bristol-Myers* applies in the class-action context is a controlling question of law.  It is undisputed that the unnamed plaintiffs who never worked in the District of Columbia cannot allege any injury or jurisdictional facts to tie their claims to the District of

Columbia.  Thus, if *Bristol-Myers* in fact applies to class actions, then the out-of-state putative class members' claims should be dismissed for want of specific jurisdiction. Given that this is a central issue concerning whether the vast majority of putative class members may properly sue in this forum, should this issue be resolved in Defendant's favor, it would alter the "future course of" this litigating and would "save time for the district court, and time and expense for the litigants" by limiting the number of claims heard here.  *See Judicial Watch, Inc.,* 233 F. Supp. 2d at 19; 16 Charles Alan Wright, et al., FEDERAL PRACTICE & PROCEDURE § 3930, at 426. Thus, this criterion is satisfied. *See id.*

**2.  There is Substantial Ground for Difference of Opinion Concerning this Controlling Question of Law.**

The question of whether *Bristol-Myers* applies to putative class actions is already an issue that has engendered much disagreement in the nine months following that decision. "Certification is appropriate where other courts have adopted conflicting positions regarding the issue of law proposed for certification."  *APCC Servs., Inc. v. Sprint*, 297 F. Supp. 2d 90, 96 (D.D.C. 2003) (citing *In re Bridgestone/Firestone, Inc. Tires Prods Liab. Litig.*, 202 F. Supp. 2d 903, 909-10 (S.D. Ind. 2002); *see also Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("[C]ourts traditionally will find that a substantial ground for difference of opinion exists where…novel and difficult questions of first impression are presented.") (internal quotation and citation omitted).

Whether *Bristol-Myers* applies to putative class actions has resulted in conflicting answers and opinions, being issued daily, expressing divergent views on a central dispute confronting over a dozen courts.  *See Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, __ F. Supp. 3d __, 2018 WL 1255021, *16 (N.D. Ill. March 12, 2018) (observing the development of emerging case law concerning the scope of *Bristol-Myers* and noting that "courts

are in disagreement about this issue").  Since the *Bristol-Myers* decision was issued nine months

ago, sixteen courts besides this one have had occasion to consider this very question.  Among

those, nine agreed with this Court, finding that *Bristol-Myers* does not apply in the class action

context.[2]    Seven courts, meanwhile, have adopted Defendant's position that the decision does

apply in the class-action context.[3]

These varying interpretations are not merely evident from the emerging case law; they

were actually foreseen at the time the *Bristol-Myers* decision was drafted.  In her dissent, Justice

Sotomayor noted that the majority in *Bristol-Myers* "does not confront the question whether its

opinion here would also apply to a class action."   137 S. Ct. at 1789 n. 4 (Sotomayor, J.,

---

[2]   *See Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*, __ F. Supp. 3d __, 2018 WL
1701994, at *6 (M.D. Fla. April 4, 2018); *Casso's Wellness Store & Gym, L.L.C. v. Spectrum
Lab. Prods., Inc.*, No. 17-2161, 2018 WL 1377608, at *4–5 (E.D. La. Mar. 19, 2018) (slip op.);
*Sanchez v. Launch Tech. Workforce Sols., LLC*, __ F. Supp. 3d __, 2018 WL 942963, at *1 (N.D.
Ga. Feb. 14, 2018); *Sloan v. Gen. Motors Corp.*, __ F. Supp. 3d __, 2018 WL 784049, at *9–10
(N.D. Cal. Feb. 7, 2018); *Feller v. Transamerica Life Ins. Co.*, No. 2:16-CV-01378, 2017 WL
6496803, at *16–17 (C.D. Cal. Dec. 11, 2017) (slip op.) (certifying nationwide class, holding
that *Bristol-Myers* did not limit unnamed class members to California residents) (interlocutory
appeal of class cert. pending); *In re Chinese-Manufactured Drywall Prods. Liab. Lit.*, No. 09-
2047, 2017 WL 5971622, at *12–21 (E.D. La. Nov. 30, 2017) (slip op.); *Day v. Air Methods
Corp.*, No. 5:17-183, 2017 WL 4781863, at *2 n.1 (E.D. Ky. Oct. 23, 2017) (slip op.); *Fitzhenry-
Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-CV-00564, 2017 WL 4224723, at *5 (N.D. Cal.
Sept. 22, 2017); *see also Swamy v. Title Source, Inc.*, No. C 17-01175, 2017 WL 5196780 (N.D.
Cal. Nov. 10, 2017) (slip op.) (holding *Bristol-Myers* does not apply to FLSA mass actions).
[3]   *Practice Mgmt. Support Servs., Inc. v. Cirque de Soleil, Inc.*, __ F. Supp. 3d __, 2018 WL
1255021, at *15–17 (N.D. Ill. Mar. 12, 2018); *Anderson v. Logitech, Inc.*, No. 17-C-6104, 2018
WL 1184729, at *1 (N.D. Ill. Mar. 7, 2018) (slip op.); *DeBernardis v. NBTY, Inc.*, No. 17-C-
6125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018) (slip op.); *McDonnell v. Nature's Way
Prods., LLC*, No. 16-CV-5011, at *4 (N.D. Ill. Oct. 26, 2017) (slip op.); *Wenokur v. ACA
Equitable Life Ins. Co.*, No. CV-17-99165, at *4, n.4 (D. Ariz. Oct. 2, 2017) (slip op.); *In re
Dental Supplies Antitrust Lit.*, No. 16 Civ. 696, 2017 WL 4217115, at *8–9 (E.D.N.Y. Sept. 20,
2017); *see also Maclin v. Reliable Reports of Tex., Inc.*, No. 1:17-CV-2612, 2018 WL 1468821,
at *3–4 (N.D. Ohio Mar. 26, 2018) (holding *Bristol-Myers* applies to "mass actions" under the
Fair Labor Standards Act (FLSA), and rejecting argument that *Bristol-Myers* is limited to mass
torts or state actions).

7

dissenting).  In short, the breadth of *Bristol-Myers*'s application remains an unsettled, unresolved question of law that will likely have to be resolved by the Supreme Court itself.

While the Court was correct to note that decisions from sister courts in Georgia, California, and Louisiana counsel in favor of a narrow interpretation of *Bristol-Myers*, a substantial number of courts have written with confidence in favor of the broader view advocated by Defendant.  *See, e.g., In re Dental Supplies Antitrust Litig.*, No 16-cv-696, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) ("Plaintiffs attempt to side-step the due process holdings in *Bristol-Myers* by arguing that the case has no effect on the law in class actions because the case before the Supreme Court was not a class action.  This argument is flawed."); *Practice Management Support Servs., Inc.,* 2018 WL 1255021, *16 (N.D. Ill. March 12, 2018) ("it is not clear how Practice Management can distinguish the Supreme Court's basic holding in Bristol-Myers simply because this is a class action."); *id.* ("[u]nder the Rules Enabling Act, a defendant's due process interest should be the same in the class context").

These cases recognize that a narrow reading of *Bristol-Myers* would effectively allow plaintiffs to circumvent the due process rights of defendants by putting forth name plaintiffs who happen to reside and suffer injuries in a preferred forum.  *See In re Dental Supplies;* 2017 WL 4217115, at *9 ("the constitutional requirements of due process do not wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due process just the same…"); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014) (holding that a plaintiff's unilateral decisions cannot inform whether specific jurisdiction over a defendant comports with due process).  They demonstrate that the features unique to class action cases—requirements of numerosity, commonality, typicality, and the like—are alone insufficient to guard a defendant's due process rights.  *See In re Dental Supplies*, 2017 WL

4217115, at *9 ("Due process to assert personal jurisdiction requires that there be a direct 'connection between the forum and the specific claims'") (quoting *Bristol-Myers*, 137 S. Ct. at 1780); *DeBernardis* , 2018 WL 461228, at *2 ("The Court believes that it is more likely than not based on the Supreme Court's comments about federalism that the courts will apply *Bristol-Myers Squibb* to outlaw nationwide class actions…where there is no general jurisdiction over the Defendants."). Thus, while reasonable minds can, have, and will continue to differ concerning this difficult and evolving question of controlling law, that ongoing confusion is sufficient to satisfy section 1292(b). *APCC Servs., Inc.,* 297 F. Supp. 2d at 96.

**3. Resolution of This Controlling Question of Law Will Materially Advance the Litigation.**

A controlling question of law materially advances the termination of litigation where the question's resolution promises to "conserve judicial resources and spare the parties from possibly needless expense if it should turn out that" it results in a reversal of the court's initial ruling. *See APCC Servs, Inc.,* 297 F. Supp. 2d at 100. In cases where the question appealed raises an issue with "far-reaching consequences" for other litigants, "an expedited and final resolution [of the issue] is imperative." *United Mine Workers of Am. 1974 Pension Trust*, 793 F. Supp. at 347.

Resolution of the question of whether *Bristol-Myers* applies to putative class actions would materially advance the termination of this litigation. If Defendant's position prevails, and the claims of non-D.C. putative class members cannot be adjudicated in this Court, that interlocutory determination would save the Court and the parties the unnecessary cost of engaging in needless but very costly discovery. All but five of Defendant's 500 stores are outside of the District of Columbia. Thus, if *Bristol-Myers* does apply to class actions, the vast majority of putative class members' claims would ultimately be dismissed for want of specific jurisdiction.

9

A Court of Appeals' ruling accepting Defendant's interpretation of *Bristol-Myers* would thus "materially advance the ultimate termination of the litigation" by limiting discovery, which might otherwise take years and potentially cost millions of dollars.  *See APCC Servs.*, 297 F. Supp. 2d at 100 (interlocutory appeals advance the termination of litigations where they stand to "conserve judicial resources and spare the parties from possibly needless expense.").  In contrast, were the Court to deny Defendant's request for certification and instead postpone resolution of the question until the class-certification stage of these proceedings (i.e. after nation-wide discovery into those remaining 452 stores has been undertaken and completed), any subsequent ruling interpreting *Bristol-Myers* broadly and limiting the scope of the Court's jurisdiction accordingly would provide cold comfort to the Defendant.[4]   By then it will have spent substantial time and effort on discovery, and it may then have to reanalyze its materials, redraft its expert reports, and retake depositions. The policy rationales behind the courts' treatment of jurisdiction as a "threshold matter" contemplate avoiding such an outcome.  *See APCC Servs., Inc.*, 297 F. Supp. 2d at 100 ("It would pain the Court to see both attorneys…[and parties] proceed to judgment after considerable expense and delay, only to discover that the judgment must be overturned on appeal because the federal judiciary lacks subject matter jurisdiction") (*quoting Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720, 728 (S.D. Tex. 2002)); *see also Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1001 (D.C. Cir. 1986) (reviewing order certified for interlocutory appeal by the district court in light of "the importance of the legal questions at issue[ ] and the enormity of the litigation presently contemplated" by the parties); *Philipp*, 253 F.

---

[4] This is especially so given that Defendant WFMG only operates stores in twenty-seven states. *See* Dkt. 30 at 39 (arguing that "Plaintiffs fail to state a claim against WFMG for employees who work outside of the 27 states in which WFMG operates"). Absent class members outside of those states are not employed by Defendant, but are instead employed by Whole Foods' other regional operating companies.

Supp. 3d at 88 (certifying for interlocutory appeal question centered on whether the Court was "the appropriate forum to hear" certain claims); *Chan v. City of New York*, 803 F. Supp. 710, 733 (S.D.N.Y. 1992) (a reduction in the scope of the litigation advances the termination of the litigation because "there is a substantial likelihood that the amount of discovery and corresponding district court time will be reduced dramatically").[5]

The potential advancement of these proceedings is not limited to the scope of discovery, however. The Court has already recognized the complications inherent in litigating a matter in which several state's laws apply. *See* Dkt. 34 at 21 n. 7 ("as do the parties, the court limits its analysis of those claims under the law of the District of Columbia, reserving analysis under the laws of other jurisdictions for a later stage. In future briefing, to the extent the parties ask the court to decide matters on the basis of several states' laws, the parties are to squarely address whether there are material variations in state law."). That observation was prescient; if no interlocutory appeal is allowed, the Court may soon be called upon to decide numerous legal issues under the laws of the *forty-three* states in which Whole Foods or other Whole Foods entities operate. But, if *Bristol-Myers* applies to this putative class action, the only laws that will apply are those of the District of Columbia. Limiting the case in this manner would streamline and facilitate its termination. *Atlantic City Elec. Co. v. General Elec. Co*., 207 F. Supp. 613, 620 (S.D.N.Y. 1962) (an issue facilitates the termination of a litigation when it "affects the scope of discovery procedure, the length and complexity of ultimate trial, and the expenditure of time, money and effort…").

---

[5]  That Plaintiffs may argue they are entitled to discovery of third-parties beyond the geographic scope of this court's jurisdiction does not change the result. If the scope of this case is not limited at this time to employees who reside in or were employed at stores located in the District, the scope of discovery—and of the predictable discovery battles—will unquestionably be of a different order of magnitude.

Furthermore, certification is appropriate here because questions as foundational as the scope of the Court's personal jurisdiction necessarily affect many potential cases and parties, and clear resolution of these questions benefits the entire judicial system.  Such foundational issues are especially appropriate for interlocutory review. *See United Mine Workers*, 793 F. Supp. at 347 (certification appropriate where the questions presented have far-reaching consequences for the federal courts); *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) (courts contemplating certification for interlocutory appeal "may properly consider the system-wide costs and benefits of allowing the appeal," including "the impact that an appeal will have on other cases.").

### 4.  **This Court Need Not Stay All Proceedings Pending Appellate Review.**

Finally, although this Court enjoys the inherent power to grant a stay pending consideration of an interlocutory appeal, *see* 28 U.S.C. § 1292(b); *see also Landis v. North American Co.*, 299 U.S. 248, 253-54 (1936), it need not do so here.  Resolution of the question posed by Defendant's present motion—whether *Bristol-Myers* applies to putative nationwide class actions—should not result in a full stay of discovery.  Instead, given that the Court's March 15, 2018 ruling established its jurisdiction over hundreds of putative class members working in all of Defendant's five D.C. locations, discovery in this matter could easily proceed as to those putative class members and those stores while the Court of Appeals considers the question certified for it.  And, given the obvious need for coordinated discovery in this case and in *Vasquez*, that initial discovery might even extend into certain stores in Maryland and Virginia which are directly implicated by the claims in *Vasquez*.[6] This "tiered" approach to discovery

---

[6]   Naturally, the discovery process in this matter will be a long one, even if it is ultimately limited to certain stores in Maryland, Virginia, and the District of Columbia.  In the event that the D.C. Circuit agrees with this Court's Appealed Order, discovery could then extend to those

makes practical sense irrespective of whether this *Bristol-Myers* question certified for appellate review, and thus allowing the interlocutory appeal will not delay discovery in this case.   An interlocutory appeal's potential to streamline this litigation counsels in favor of certification.   *See APCC Servs., Inc.*, 297 F. Supp. 2d at 96 (courts should look favorably upon the idea of certification in "proceedings that threaten to endure for several years" that "depend on an initial question or jurisdiction") (citation omitted).

## CONCLUSION

Whether *Bristol-Myers* applies to class actions is an important, developing question of law that no circuit court has had the chance to address.   The Court has the opportunity to certify this question for consideration by the D.C. Circuit.    The resolution of that appeal, in turn, will have a profound impact not only on the fate of the present action, but it will also help resolve a question lying at the very heart of personal jurisdiction jurisprudence.   A concrete answer to that question will be of interest to all class action litigants within this Circuit and elsewhere.   Because the Court's March 15, 2018 Order satisfies each of section 1292(b)'s criteria, Whole Foods requests that the Court grant this motion for permissive appeal in order to provide the vehicle for resolution of this important, unanswered question.

---

remaining locations for those absent class matters. Such phased discovery would not cause any prejudice to Plaintiffs.  In the event that the Court agrees with Defendant that *Bristol-Myers* does apply in the class context, however, discovery would remain limited to certain stores located in Maryland, Virginia, and the District of Columbia, without Defendant having been prejudiced by the broader scope of nationwide discovery.

AUS 536753648v6

Dated: April 13, 2018

Respectfully Submitted,

**GREENBERG TRAURIG, LLP**

By: */s/ Gregory J. Casas*
Gregory J. Casas
Bar No. 455329
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone:  512.320.7200
Facsimile:  512.320.7210

David Sellinger
Bar No. 282780
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Telephone:  973.360.7900
Facsimile:  973.301.8410

John H. Hempfling, II (*pro hac vice*)
550 Bowie Street
Austin, TX 78703
Telephone:  512.542.0213
Facsimile:  512.482.7213

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically filed with the Court and that counsel of record, who are deemed to have consented to electronic service are being served this 13th day of April, 2018, via the Court's CM/ECF System.

*/s/ Gregory J. Casas*
Gregory J. Casas

AUS 536753648v6