## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL MOLOCK, *et al.*,              :

      Plaintiffs,                    :

      v.                             :          **Case No. 1:16-cv-02483-APM**
                                                    **Judge Amit P. Mehta**
WHOLE FOODS MARKET, INC.,              :

      Defendant.                     :

---

### MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL

---

## I.   INTRODUCTION

In support of its Motion to Certify for Interlocutory Appeal ("Motion," ECF No. 37), Defendant asks the Court to take the extraordinary step of deviating from the ordinary course of litigation by certifying for interlocutory appeal a question of law addressed in the Court's March 15, 2018, Order:[1] whether a recent decision of the Supreme Court (*Bristol-Myers*[2]) bars the class representatives from advancing the claims of nonresident, putative class members. The Court should deny Defendant's Motion either because (1) there is not "substantial ground for difference of opinion" regarding the relevant question of law or (2) it is not likely "that an immediate appeal from the order may materially advance the ultimate termination of the litigation" (or both).

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

---

[1] Memorandum Opinion and Order, ECF No. 34.

[2] *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017).

## II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On March 15, 2018, the Court issued a Memorandum Order and Opinion ("March 15 Order," ECF No. 34), granting in part and denying in part Defendants' Motion to Dismiss Second Amended Class Action Complaint (ECF No. 28).   In the March 15 Order, the Court held, in relevant part, that *Bristol-Myers* does **not** bar class representatives in a Rule 23 class action from advancing the claims of putative class members who are not residents of the forum jurisdiction.   Noting that to reach the opposite conclusion would yield the absurd result of eviscerating Rule 23's class action mechanism, the Court agreed with the strong majority of district courts that have had occasion to consider the issue.

On April 13, 2018, Defendant moved, pursuant to 28 U.S.C. 1292(b), to certify for interlocutory appeal that portion of the March 15 Order that pertained to *Bristol-Myers*.

## III.   ARGUMENT

### A.   Legal Standard for Interlocutory Appeal

28 U.S.C. § 1292(b) governs certification of questions from the district courts for interlocutory review:

> (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that [1] such order involves a controlling question of law as to which there is substantial ground for difference of opinion and [2] that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.
>
> The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

> the district court unless the district judge or the Court of Appeals
> or a judge thereof shall so order.

28 U.S.C.A. § 1292 (West) (italics in original; enumeration and line break added for clarity).

It is axiomatic that interlocutory appeals are warranted only when the movant can "show that **exceptional circumstances** justify a departure from the traditional structure of litigation where appellate review is postponed until after the entry of final judgment." *Graham v. Mukasey*, 608 F. Supp. 2d 56, 57 (D.D.C. 2009) (emphasis added). This Court has repeatedly observed that only "exceptional circumstances" or "exceptional cases" warrant the certification of a question for interlocutory appeal.[3] Indeed, as this Court noted as long ago as 1976,

> "The legislative history of subsection (b) of section 1292 . . .
> indicates that it **was to be used only in extraordinary cases**
> where decision of an interlocutory appeal might avoid protracted
> and expensive litigation. **It was not intended merely to provide
> review of difficult rulings in hard cases.**"

*U. S. ex rel. Hollander v. Clay*, 420 F. Supp. 853, 859 (D.D.C. 1976) (emphasis added) (quoting *United States Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966)).

The policy rationale for permitting interlocutory appeal only in exceptional cases is straightforward: "A party seeking certification pursuant to § 1292(b) must meet a high standard to overcome the 'strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals.'" *Judicial Watch, Inc. v.*

---

[3]   *See, e.g.*, Arias v. DynCorp, 856 F. Supp. 2d 46, 53 (D.D.C. 2012); *Elkins v. D.C.*, 685 F. Supp. 2d 1, 6 (D.D.C. 2010), aff'd, 690 F.3d 554 (D.C. Cir. 2012); *Al Maqaleh v. Gates*, 620 F. Supp. 2d 51, 54 (D.D.C. 2009); *Graham v. Mukasey*, 608 F. Supp. 2d 56, 57 (D.D.C. 2009) ("Interlocutory appeals are infrequently allowed. The movant must show that exceptional circumstances justify a departure from the traditional structure of litigation where appellate review is postponed until after the entry of final judgment."); *Nat'l Cmty. Reinvestment Coal. v. Accredited Home Lenders Holding Co.*, 597 F. Supp. 2d 120, 122 (D.D.C. 2009); *Am. Soc. For Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 246 F.R.D. 39, 43 (D.D.C. 2007); *Virtual Def. & Dev. Int'l, Inc. v. Republic of Moldova*, 133 F. Supp. 2d 9, 22 (D.D.C. 2001) ("Although courts have discretion to certify an issue for interlocutory appeal, interlocutory appeals are rarely allowed. Indeed, the movant bears the burden of showing that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.").

*Nat'l Energy Policy Dev. Grp.*, 233 F. Supp. 2d 16, 20 (D.D.C. 2002) (quoting *United States v. Nixon*, 418 U.S. 683, 690 (1974)).   In other words, the rule guards against the delays that would be inherent in a system that allowed parties to needlessly second-guess each and every decision of the trial judge.   The Supreme Court has expounded on this strong policy against piecemeal appeals, as well:

> Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system.  In addition, the rule is in accordance with the sensible policy of avoiding the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment.

*Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981) (citations omitted). "Although courts have discretion to certify an issue for interlocutory appeal, **interlocutory appeals are rarely allowed**.  Indeed, the movant bears the burden of showing that **exceptional circumstances** justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Virtual Def. & Dev. Int'l, Inc. v. Republic of Moldova*, 133 F. Supp. 2d 9, 22 (D.D.C. 2001) (emphasis added) (internal citations omitted); *see also Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379 n.13 (1981) (noting that Section 1292(b) was designed for only "exceptional circumstances").[4]

---

[4]    In the rare instances in which certification has been found to be warranted, the exceptional nature of the cases often practically leaps off the page.  *See, e.g., Philipp v. Fed. Republic of Germany*, 253 F. Supp. 3d 84 (D.D.C. 2017) (Granted) (Kollar-Kotelly, J.) (plaintiffs sued Germany, alleging that it wrongfully possessed collection of medieval art "because the 1935 sale of same was coerced as part of the Nazi persecution of the Jewish sellers"); *Han Kim v. Democratic People's Republic of Korea*, 950 F. Supp. 2d 29, 43 (D.D.C. 2013), rev'd and remanded, 774 F.3d 1044 (D.C. Cir. 2014) (Granted) (Roberts, J.) (brother and son of abducted reverend sued North Korea under terrorism exception to Foreign Sovereign Immunities Act); *Mwani v. Laden*, 947 F. Supp. 2d 1 (D.D.C. 2013) (Granted) (Facciola, Mag. J.) (victims of the 1998 bombing of U.S. Embassy in Nairobi, Kenya, sued Osama Bin Laden, Al Qaeda, and Afghanistan under Alien Tort Claims Act and Foreign Sovereign Immunities Act); *Al Maqaleh v. Gates*, 620 F. Supp. 2d 51, 53 (D.D.C. 2009) (Granted) (Bates, J.) (aliens detained for six years as enemy combatants at Bagram Air Field petitioned for writs of habeas corpus).

**B. Defendant's Motion should be denied because there is simply no reason to take the extraordinary step of derailing this case from the normal track of civil litigation.**

**1. *Motions to dismiss <u>require</u> that the Court exercise its judgment to apply the law to the facts of the case at bar.***

In asking the Court to grant its Motion, Defendant misapprehends the balance of power between the trial and appellate courts in our federal judiciary. Strip back the Motion's polished veneer, and the flaws in the underlying logic reveal themselves.

Defendant asserts that it ought to be entitled to take an interlocutory appeal of the Court's decision on the grounds that the Court exercised judgment in reaching that decision. Defendant's argument only carries logical sway if one is willing to proceed from the assumption that unless there is rock-solid precedent on all fours with the facts of a given case, the trial court cannot properly rule on motions to dismiss. To state the obvious, that is not the law.

Ruling on questions of law presented on motions to dismiss **always requires** that a trial court exercise discretion. Were there ample binding precedent directly on point for a given issue, and in the context of an identical set of facts, one of the parties to the motion would likely merit Rule 11 sanctions. In other words, if the answer is crystal clear, then either the claim or the motion to dismiss it is necessarily frivolous. As a matter of course, non-frivolous arguments on motions to dismiss always require that the Court exercise its judgment.

The mere existence of a split in authority (here, a very lopsided split, as discussed in Section III.B.3) does not render the trial court powerless to decide questions of law; it does not obligate the trial court to throw up its hands and ask the D.C. Circuit to weigh in. If anything, it obligates the trial court to do precisely what the Court did in its March 15 Order—review both controlling and persuasive authority, apply it to the facts of the case, and decide the issues.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

### 2. In its March 15 Order, the Court properly relied on controlling as well as persuasive authority, applied it to the facts set forth in the Second Amended Complaint through the applicable legal standard, and reached its decision.

In weighing Defendant's Motion to Dismiss, the Court did precisely what is expected of a trial court. It reviewed the parties' papers and read (and cited) the controlling authority, including *Bristol-Myers*. It also reviewed persuasive authority from its sister courts, including specifically *Sanchez v. Launch Tech. Workforce Sols., LLC*, No. 17-cv-1904, 2018 WL 942963, at *1 (N.D. Ga. Feb. 14, 2018); *Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*, No. 17-cv-00564, 2017 WL 4224723 (N.D. Cal. Sep. 22, 2017); *In re Chinese-Manufactured Drywall Prods. Liability Litig.*, No. 09-2047, 2017 WL 5971622 (E.D. La. Nov. 30, 2017). Having reviewed that authority, and taking note of the absurd result that would spring from Defendant's proposed reading of *Bristol-Myers* (*i.e.*, the evisceration of Rule 23), the Court rendered its decision. In short: precisely what is expected of it.

Defendant's Motion strives to paint the Court's decision as a difficult one. Even accepting that premise as true for the sake of argument, it would not warrant certification for interlocutory appeal. The federal judiciary entrusts district court judges with making not only easy decisions, but hard ones, as well. Indeed, as the *Hollander* court noted, Section 1292(b) was intended to be used in only exceptional cases; it unequivocally was "**not** intended merely to provide review of difficult rulings in hard cases." 420 F. Supp. at 859 (emphasis added).

The trial court is not expected—let alone **required**—to seek the opinion of the D.C. Circuit on every point of law raised on a motion to dismiss. To the contrary, it is tasked with looking to the relevant authority (both controlling and persuasive), interpreting that authority, and rendering a decision. That is precisely what the Court did in its March 15 Order.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

### 3. Defendant's Motion should be denied because it cannot prove the existence of a "substantial ground for difference of opinion," regarding Bristol-Myers' (non-)applicability to class actions, as required by 28 U.S.C. § 1292(b).

In order to prevail on its Motion, Defendant must first convince the Court that its March 15 Order "involves a controlling question of law as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). To that end, although Defendant concedes that fully ten cases (including this one)[5] in which the question was raised have held *Bristol-Myers* **not** to apply to class actions, it goes on to contend that "[s]even courts, meanwhile, have adopted Defendant's position that the decision does apply in the class-action context." (Def.'s MP&A at 7). Not quite.

Of the seven cases cited by Defendant in support of its position, four[6] come from the same district (Northern District of Illinois); of the remaining three, one presents mere dicta, one presents dicta that does not even support Defendant's argument, and the third also does not support Defendant's argument. The first non-Illinois case cited, *Wenokur v. AXA Equitable Life*

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

---

[5]    *Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*, __ F. Supp. 3d __, 2018 WL 1701994, at *6 (M.D. Fla. April 4, 2018); *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods., Inc.*, No. 17-2161, 2018 WL 1377608, at *4–5 (E.D. La. Mar. 19, 2018) (slip op.); *Sanchez v. Launch Tech. Workforce Sols., LLC*, __ F. Supp. 3d __, 2018 WL 942963, at *1 (N.D. Ga. Feb. 14, 2018); *Sloan v. Gen. Motors Corp.*, __ F. Supp. 3d __, 2018 WL 784049, at *9–10 (N.D. Cal. Feb. 7, 2018); *Feller v. Transamerica Life Ins. Co.*, No. 2:16-CV-01378, 2017 WL 6496803, at *16–17 (C.D. Cal. Dec. 11, 2017) (slip op.) (certifying nationwide class, holding that *Bristol-Myers* did not limit unnamed class members to California residents) (interlocutory appeal of class cert. pending); *In re Chinese-Manufactured Drywall Prods. Liab. Lit.*, No. 09-2047, 2017 WL 5971622, at *12–21 (E.D. La. Nov. 30, 2017) (slip op.); *Day v. Air Methods Corp.*, No. 5:17-183, 2017 WL 4781863, at *2 n.1 (E.D. Ky. Oct. 23, 2017) (slip op.); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-CV-00564, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017); *see also Swamy v. Title Source, Inc.*, No. C 17-01175, 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017) (slip op.) (holding *Bristol-Myers* does not apply to FLSA mass actions).

[6]    *Practice Mgmt. Support Servs., Inc. v. Cirque de Soleil, Inc.*, __ F. Supp. 3d __, 2018 WL 1255021, at *15–17 (N.D. Ill. Mar. 12, 2018); *Anderson v. Logitech, Inc.*, No. 17-C-6104, 2018 WL 1184729, at *1 (N.D. Ill. Mar. 7, 2018) (slip op.); *DeBernardis v. NBTY, Inc.*, No. 17-C-6125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018) (slip op.); *McDonnell v. Nature's Way Prods., LLC*, No. 16-CV-5011, at *4 (N.D. Ill. Oct. 26, 2017) (slip op.).

*Insurance Company*, mentions *Bristol-Myers*' applicability to class actions only briefly, in footnoted dicta, on a motion to transfer venue, with no analysis provided.  No. CV-17-00165-PHX-DLR, 2017 WL 4357916, at *4 n.4 (D. Ariz. Oct. 2, 2017).  It is not even clear whether the court had the benefit of briefing on the issue.

The second non-Illinois case, *In re Dental Supplies Antitrust Litigation*, again presents only dicta; moreover, even the conclusion of that dicta does not support Defendant's position. No. 16CIV696BMCGRB, 2017 WL 4217115, at *8 (E.D.N.Y. Sept. 20, 2017).  Indeed, the entire discussion of *Bristol-Myers* falls within a section of the opinion whose introductory paragraph could hardly have made that clearer:

> Having found that there is no statutory basis for personal jurisdiction under New York's long-arm statute, the Court need not consider the next step of analyzing whether jurisdiction comports with due process.   But assuming *arguendo* that plaintiffs' minimal showing is sufficient under New York law, the Court still cannot assert personal jurisdiction over [defendant] Burkhart because it would violate due process.

*Id.* (emphasis in original).  More fatally, even that dictum does not stand for the proposition for which Defendant cites it.   The court did **not** hold that *Bristol-Myers* barred a class representative from pursuing the claims of nonresident, putative class members.   It merely suggested—again, in dicta—that had it reached the question, the Court would have concluded that **defendant Burkhart's contacts** with the forum were insufficient for it to exercise specific jurisdiction over him.

Finally, the third non-Illinois case, *Maclin v. Reliable Reports of Texas, Inc.*, proves no more supportive of Defendant's position than did the first two.  No. 1:17 CV 2612, 2018 WL 1468821, at *1 (N.D. Ohio Mar. 26, 2018).  The motion to dismiss at issue concerned only the plaintiffs' claims as part of a Fair Labor Standards Act collective action, not a Rule 23 class action.  (Defendant at least partially recognizes this by way of a parenthetical citation.  (Def.'s

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

8

MP&A at 7 n.3).)  To perhaps state the obvious, FLSA collective actions are **not** Rule 23 class actions.[7]

In sum, while Defendant claims that "seven courts" support its desired reading of *Bristol-Myers*, the reality of the matter proves quite different—only four judges, all in the same district, have actually **held** as much.  On the other side of the scale, ten judges, across fully seven different districts, have determined that *Bristol-Myers* does not apply to Rule 23 class actions.  (*See supra* n.5).  The reality is that there is simply not "substantial ground for difference of opinion," 28 U.S.C. § 1292(b), regarding the impact of *Bristol-Myers* on Rule 23 class actions.  Defendant's Motion should therefore be denied.

#### 4. *Defendant's Motion should be denied because even if the Court's March 15 Order hinged on a "controlling question of law as to which there is substantial ground for difference of opinion," certification would not "materially advance the ultimate termination of the litigation," as also required by Section 1292(b).*

In addition to demonstrating that the March 15 Order "involves a controlling question of law as to which there is substantial ground for difference of opinion," Defendant must also convince the Court "that an immediate appeal from the order may materially advance the ultimate termination of the litigation" as a precondition of certifying an order for interlocutory review.  28 U.S.C. 1292(b).  On the facts of this case, it is inconceivable that an interlocutory appeal would "materially advance the ultimate termination of the litigation."  Accordingly, review of the order in question does not meet the second prong of the test set forth in Section 1292(b).

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

---

[7] *See Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, 249 n.19 (5th Cir. 2016) ("Plaintiffs brought this action as a collective action under § 216(b) of the FLSA, not a class action under Rule 23 of the Federal Rules of Civil Procedure."); William C. Jhaveri-Weeks & Austin Webbert, *Class Actions Under Rule 23 and Collective Actions Under the Fair Labor Standards Act: Preventing the Conflation of Two Distinct Tools to Enforce the Wage Laws*, 23 GEO. J. ON POVERTY L. & POL'Y 233, 236 (2016).

For the reasons set forth above, (*see supra* Sec. III.B.3), even if the Court were to certify the question, and the D.C. Circuit were to agree to hear the interlocutory appeal, the most likely result would be for the D.C. Circuit to affirm this Court's ruling (for the same legal reasons that seven of the eight districts to develop the law on the issue have interpreted *Bristol-Myers* the same way).   In that event, an interlocutory appeal would plainly not have advanced the termination of the case; to the contrary, it would have caused undue delay and increased costs.

Even the flip side of the coin does not support Defendant's argument.  That is to say, even if the D.C. Circuit were to reverse this Court's decision in the March 15 Order, the appeal **still** would not materially advance the ultimate termination of the case because at least **some** claims would be guaranteed to move forward, and the scope of discovery would remain virtually unchanged.

The reason for that is straightforward:  The vast majority of the discovery to be taken will pertain to issues of liability, and the liability issues remain the same whether there are hundreds of putative class members or thousands.  More specifically, unless Defendant does an about-face and admits fault for crafting, endorsing, or ratifying the scheme to defraud its employees, Plaintiffs will need to take discovery sufficient to explore and prove the nationwide nature of the wrongdoing.  The nationwide nature of the wrongdoing is acutely at issue in this case.  Like the Whole Foods managers in the *Vasquez* case,[8] Plaintiffs have alleged that the fraudulent scheme existed at a national level.  Defendant, on the other hand, has scapegoated its former managers and alleged that the scheme did not go beyond the stores at which they worked.  Plaintiffs must be entitled to challenge Defendant's defense and explore the national scope of Defendant's wrongdoing.   Juxtaposed with the liability discovery that will be

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

---

[8]    *Vasquez v. Whole Foods Market, Inc.*, 17-cv-00112-APM (D.D.C.).

10

necessary in this case, calculation of individual damages will require merely the application of a mathematical formula.

In sum, whether the D.C. Circuit were to affirm or reverse the Court's March 15 Order, one would not reasonably expect the interlocutory appeal to "materially advance the ultimate termination of the litigation." To the contrary, "[a]ny appeal will almost certainly prolong both the discovery period and the resolution of the litigation," and, as such, the Court should decline to embark down that road by certifying its March 15 Order for appeal. *Arias v. DynCorp*, 856 F. Supp. 2d 46, 54 (D.D.C. 2012).

### C. If the Court is inclined to grant Defendant's Motion, discovery should not be stayed during the pendency of the interlocutory appeal.

As the second half of Section 1292(b) makes clear, when questions are certified for interlocutory appeal, proceedings in the district court are not automatically stayed:

> The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: ***Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.**

28 U.S.C. § 1292 (italicization in original; bolding added).

Although Defendant contends that "This Court need not stay all proceedings pending appellate review," (Def.'s MP&A at 12), coyly, Defendant never states precisely what discovery it believes should be allowed to go forward. Defendant does suggest that "discovery in this matter could easily proceed as to those putative class members and those stores [in the District of Columbia] while the Court of Appeals considers the question certified for it." (Def.'s MP&A at 12). Assuming Defendant means to ask that the Court limit discovery to only those putative

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

11

class members and those stores, such a partial stay on discovery pending an interlocutory appeal would be inappropriate.  It would serve only to impose a wasteful and needless delay on discovery that will need to be conducted anyway.

As discussed above, even **if** this Court certified the question for interlocutory appeal, **if** the D.C. Circuit decided, in its discretion, to hear it, and **if** it reversed this Court's decision regarding *Bristol-Myers* (unlikely, as reflected by this Court's reasoning in the March 15 Order and in the 7-1 split among district courts that have considered the issue), the scope of discovery in this action would not be meaningfully altered (unless Defendant is now prepared to confess to its culpability).  (*See supra* Sec. III.B.4).  Further, as Defendant notes in its Motion, discovery in this case is likely to be coordinated with that in the *Vasquez* case also pending before this Court.  Given the claims presented in the *Vasquez* case (particularly with respect to defamation), there would be simply no way to constrain discovery in these cases to only the Defendant's stores within the District of Columbia.  Accordingly, if this Court determines to grant Defendant's Motion, it should decline to impose a stay of any kind on these proceedings; instead, it should permit the parties to move forward with the discovery that will be necessary no matter the result of any interlocutory appeal.

## IV.   CONCLUSION

For the reasons set forth above, the Court should deny Defendants' Motion to Certify for Interlocutory Appeal.

Dated: April 27, 2018

Respectfully submitted,

REGAN ZAMBRI LONG

By:   _/s/ Christopher J. Regan_
Patrick M. Regan          D.C. Bar No. 336107
pregan@reganfirm.com
Salvatore J. Zambri       D.C. Bar No. 439016
szambri@reganfirm.com
Christopher J. Regan     D.C. Bar No. 1018148
cregan@reganfirm.com
1919 M Street, NW, Suite 350
Washington, DC 20036
Pн:   (202) 463-3030
Fx:   (202) 463-0667
_Counsel for Plaintiff_

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

**Certificate of Service**

I HEREBY CERTIFY that on April 27, 2018, I electronically served the foregoing Memorandum of Points and Authorities in Opposition to Defendants' Motion to Certify for Interlocutory Appeal via the Court's electronic filing system to counsel of record for all partied who have appeared.

/s/ *Christopher J. Regan*
Christopher J. Regan

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030