## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL MOLOCK, et al.,

                Plaintiffs,

    v.

WHOLE FOODS MARKET, INC., et al.,

                Defendants.

Case No. 1:16-cv-02483-APM

## DEFENDANT'S REPLY IN SUPPORT OF ITS
## MOTION  TO CERTIFY FOR INTERLOCUTORY APPEAL

Whole Foods seeks an interlocutory appeal to address a single but central legal question—whether the recent decision in *Bristol-Myers Squib Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017) applies to class actions. *See* Mtn. to Certify [Dkt 37]. If that question is decided in Whole Foods' favor, this Court will only have personal jurisdiction over claims of putative class members who have worked at the five Whole Foods stores in D.C., rather than the proposed nationwide class that encompasses nearly five-hundred stores.

In their Response, Plaintiffs assert that seven cases from four jurisdictions which apply *Bristol-Myers* to class actions or similar FLSA proceedings are somehow insufficient to show a genuine dispute about this legal question. Second, Plaintiffs argue that even if the D.C. Circuit ruled in Whole Foods' favor and the putative class was limited to the five D.C. Stores, Plaintiffs will still insist upon the same nationwide discovery. Given that neither of these arguments survives reasonable scrutiny, Whole Foods requests that the Court certify the above legal question for interlocutory appeal.

## ARGUMENT

**I. PLAINTIFFS' DISAGREEMENT WITH—OR DISCOUNTING OF—OPINIONS FROM OTHER FEDERAL COURTS CANNOT CHANGE THE FACT THAT THERE IS A CLEAR SPLIT OF AUTHORITY ON THIS CONTROLLING QUESTION OF LAW.[1]**

"A substantial ground for difference of opinion is often established by a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits." *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 97 (D.D.C. 2003) (citations omitted). There is currently a split of authority amongst over one dozen federal district courts on the issue. *See* Motion to Certify [Dkt 37-1] at 7, n.2–n.3. Thus, this case presents a split of authority evincing a substantial difference of opinion that satisfies the requirement under Section 1292(b).

In their Response, Plaintiffs do not dispute that there a split of authority. *See* Resp. [Dkt. 38] at 7–9. Instead, Plaintiffs assert that the seven cases which support Whole Foods' position should be ignored, either because they are from a single district or because they do not directly apply *Bristol-Myers* in the context of a motion to dismiss a Rule 23 class action. Before addressing these arguments, Whole Foods emphasizes that regardless of how Plaintiffs choose to count these conflicting opinions—whether by number of cases, number of districts, or any other metric—it is clear that there are two competing bodies of law on this central legal question, and therefore a substantial difference of opinion currently exists.

---

[1] Plaintiffs' arguments concerning the Court's exercise of its discretion, *see* Resp. at 5-6, have no bearing on Section 1292(b)'s criteria. A request for certification under that Section does not question the Court's exercise of its own judgment, nor does it subvert "the balance of power between the trial and appellate courts in our federal judiciary." *See* Resp. at 5. Instead, it merely observes that all of Section 1292(b)'s criteria are satisfied and that the Court of Appeals can streamline litigation by ruling on an unresolved and controlling question of law.

**A.    The four cases from the Northern District of Illinois should not be discounted merely because they originate in a single district.**

In their Response, Plaintiffs correctly note that "[o]f the seven cases cited by Defendant in support of its position, four come from the same district (Northern District of Illinois) . . . ." Resp. [Dkt. 38] at 7, n.6.  Plaintiff claims that these four cases should be weighed, as if on a scoreboard, against "[eight] judges, across fully [six] different districts"[2] who have concluded that *Bristol-Myers* does not apply to class actions.  *Id.* at 9.  But this Court has repeatedly rejected an attempt to conflate the merits of a legal disagreement with a simple tally of how courts have ruled.  "The mere fact that a substantially greater number of judges have resolved the issue one way rather than another does not, of itself, tend to show that there is no ground for difference of opinion."  *APCC Servs.*, 297 F. Supp. 2d at 98 (noting courts "must analyze the strength of arguments in opposition," rather than relying on headcount of decisions).

As relevant here, the four Illinois cases offer compelling analysis for why *Bristol-Myers* should apply to class actions.  First, Judge Thomas M. Durkin explained his disagreement with the argument that class actions provide sufficient due process protections, thereby eliminating the need for personal-jurisdiction analysis. *Practice Mgmt. Support Servs., Inc. v. Cirque de Soleil, Inc.*, __ F. Supp. 3d __, 2018 WL 1255021, at *16–17 (N.D. Ill. Mar. 12, 2018).  As he explained, the "Supreme Court has emphasized that 'Rule 23's [class action] requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that the [federal court] rules of procedure shall not abridge, enlarge, or modify any

---

[2]  Plaintiffs claim that "ten judges" across "seven different districts" have held that *Bristol-Myers* does not apply to class actions.  *See* Resp. at 9.  However, the footnote cited lists only nine cases from six different federal districts.  *Id.* at 7, n.5. Moreover, one of these cases addresses whether *Bristol-Myers* applies to FLSA collective actions, which Plaintiffs claim is irrelevant to whether *Bristol-Myers* applies to Rule 23 class actions.  *See* Resp. at 8-9 (diminishing the relevance of *Maclin v. Reliable Reports of Texas, Inc.* on the grounds that it "concerned only the plaintiffs' claims as part of a Fair Labor Standards Act collective action, not a Rule 23 class action.").

3

substantive right.'" *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 592 (1997)).

Similarly, in *Debernardis v. NBTY, Inc.*, Judge Harry D. Leinenweber acknowledged that this

may be "a close question," but concluded that "it is more likely than not based on the Supreme

Court's comments about federalism that the courts will apply *Bristol-Myers Squibb* to outlaw

nationwide class actions in a forum, such as in this case, where there is not general jurisdiction

over defendants." 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018). The remaining two Illinois

cases also provide substantial analysis supporting Whole Foods' position, and show that there

exists two well-reasoned bodies of law that have reached opposite results on this issue.[3]

Whole Foods does not ask the Court adopt the analysis of these sister courts. Instead,

Whole Foods only asks that this Court "recognize[] the arguments in support of contrary

conclusions are not insubstantial." *APCC Servs.*, 297 F. Supp. 2d at 98. Thus, this legal

question satisfies the "substantial ground for difference of opinion" requirement for certification.

### B.     The remaining three courts that have applied *Bristol-Myers* in similar contexts also demonstrate a substantial ground for difference of opinion.

In addition to the four cases from Illinois, three other federal courts have applied *Bristol-*

*Myers* in the context of Rule 23 class actions or similar FLSA mass actions.[4] Plaintiffs assert

that these cases should be disregarded because the actual rulings did not dismiss the claims of

absent class members in a putative class action. Resp. [Dkt. 38] at 7–9. This overly narrow

---

[3] Judge Leinenweber reaffirmed his holding in *Anderson v. Logitech, Inc.* 2018 WL 1184729, at *1 (N.D. Ill. Mar. 7, 2018). Finally, Judge Sara L. Ellis cited pre-*Bristol-Myers* cases for the proposition that requiring defendants to submit to a forum with no connections to most of plaintiffs' claims merely because one plaintiff can maintain suit violates traditional notions of fair play and substantial justice. *McDonnell v. Nature's Way Prod., LLC*, 2017 WL 4864910 at *4 (N.D. Ill. Oct. 10, 2017) (internal citations omitted).

[4] *Wenokur v. ACA Equitable Life Ins. Co.*, No. CV-17-99165, at *4, n.4 (D. Ariz. Oct. 2, 2017) (slip op.); *In re Dental Supplies Antitrust Lit.*, No. 16 Civ. 696, 2017 WL 4217115, at *8–9 (E.D.N.Y. Sept. 20, 2017); *Maclin v. Reliable Reports of Tex., Inc.*, No. 1:17-CV-2612, 2018 WL 1468821, at *3–4 (N.D. Ohio Mar. 26, 2018).

AUS 536758218v6

reading ignores the actual criterion at issue—i.e., whether there is a difference of opinion about *Bristol-Myers* application to a class action.

First, in *Wenokur v. ACA Equitable Life Insurance Co.*, the court applied *Bristol-Myers* to a nationwide class action—albeit in the context of a motion to transfer venue from Arizona to New York.  2017 WL 4357916, at *2.  Specifically, the Court concluded that New York was the superior venue in part because the defendant was subject to general jurisdiction in New York, whereas Arizona "lacks personal jurisdiction over the claims of putative class members with no connection to Arizona and therefore would not be able to certify a nationwide class."  *Id.* at 4, n.4 (citing *Bristol-Myers*).

Second, in *Maclin v. Reliable Reports of Texas, Inc.*, another federal court applied *Bristol-Myers* and dismissed nonresident class-members claims—albeit in the context of a FLSA collective action.  2018 WL 1468821, at *3.  The Response merely "state[s] the obvious, FLSA collective actions are not Rule 23 class actions"—with no explanation for how that distinction affects the *Bristol-Myers* analysis.[5]  Resp. [Dkt. 38] 8–9.

Finally, *In re Dental Supplies Antitrust Litigation* addressed whether *Bristol-Myers* applies to class actions—albeit in response to a nonresident named plaintiff's argument that because personal jurisdiction existed for some unnamed class-members, Rule 23 provided sufficient protections such that *Bristol-Myers* should not apply.  2017 WL 4217115, at *9.  The Court rejected that argument, holding that "constitutional requirements of due process *do[] not wax and wane when the complaint is individual or on behalf of a class*."  *Id.* (emphasis added).

---

[5] In fact, the two courts that applied *Bristol-Myers* to FLSA collective actions repeatedly cited cases involving Rule 23 class actions.  *See Maclin*, 2018 WL 1468821, at *3–4; *Swamy*, 2017 WL 5196780 (citing Rule 23 cases in finding that *Bristol-Myers* does not apply to FLSA actions).

AUS 536758218v6

Once again, Whole Foods does not discuss these cases in an attempt to encourage this Court to change its ruling.  However, the above seven cases establish that there is a substantial ground for difference of opinion concerning whether *Bristol-Myers* applies to class actions.

## II.    FAVORABLE RESOLUTION OF THE CHALLENGED QUESTION WOULD MATERIALLY ADVANCE THE TERMINATION OF THIS LITIGATION.

Plaintiffs' argue that it is "inconceivable" that an interlocutory appeal would "materially advance the ultimate termination of the litigation."  *See* Resp. at 9.  But the benefits of proceeding in five stores in the District (or even the nine stores at issue in *Vasquez*) versus proceeding in nearly 500 stores[6] in forty-three states are obvious.   In any event, Plaintiffs misapprehend Section 1292(b)'s requirements.

To satisfy Section 1292(b)'s "material advancement" criterion, a party must show that "an immediate appeal would conserve judicial resources and spare the parties from possibly needless expense *if it should turn out that [the district] Court's rulings are reversed*."  *APCC Servs., Inc.*, 297 F. Supp. 2d at 100 (citation omitted) (emphasis added).[7]

Plaintiffs' first argument turns this framework on its head, and presupposes that the D.C. Circuit will *not* reverse the district court's ruling.  *See* Resp. at 10 (divining that "even if the Court were to certify the question….the most likely result would be for the D.C. Circuit to affirm this Court's ruling" which would "plainly not have advanced the termination of the case.").

---

[6] Plaintiffs have alleged that Defendant operates 466 stores.  *See* Second Am. Compl. ¶ 12. Whole Foods Market Group, Inc. operates stores in twenty-seven states, and there are Whole Foods locations in forty-three states.

[7] Such a showing can often be made in the context of interlocutory appeals centering on issues of personal jurisdiction.  *See GTE New Media Servs. Inc. v. Ameritech Corp.*, 44 F. Supp. 2d 313, 316 (D.D.C. 1999) ([i]f the District of Columbia Circuit rules that personal jurisdiction does not exist…much time and resources will have been wasted."); *see id.* (recognizing that "several circuits…have held that interlocutory appeal may be taken on the issue of personal jurisdiction).

AUS 536758218v6

Plaintiffs present a fallacy: a denied interlocutory appeal necessarily causes "delay and increased costs"; this is precisely why the relevant inquiry contemplates the appeal's *success*.

The only other point Plaintiffs present concerning the "material advancement" criterion is that "[t]he vast majority of discovery to be taken will pertain to issues of liability, and the liability issues remain the same whether there are hundreds of putative class members or thousands." *See* Resp. at 10; *see also id.* at 12 (even "if [the D.C. Circuit] reversed this Court's decision regarding *Bristol-Myers*….the scope of discovery in this action would not be meaningfully altered".) Not quite. This argument assumes the Court will utilize its discretion to allow Plaintiffs more discovery than they need for class certification in violation of the proportionality considerations now emphasized by the revised federal rules. *See Oxbow Carbon & Minerals, LLC v. Union Pacific Railroad Co.*, 322 F.R.D. 1, 6 n.3 (D.D.C. 2017) ("the 2015 amendments have brought to the forefront of rule 26 the concept of proportionality—that is, the duty of the parties and the court to make a 'case-specific determination of the appropriate scope of discovery'") (citing Fed. R. Civ. P. 26(b)(1)).

"Controlling the permissible scope of discovery" "must ultimately be left to the sound discretion of the trial judge." *Tavoulareas v. Piro*, 93 F.R.D. 35, 42 (D.D.C. 1981). In the class context, a plaintiff is not automatically entitled to nation-wide discovery upon making an allegation of a nation-wide policy or practice. *See Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 312-13 (D. Col. 1998) (denying discovery into FLSA overtime violations in all of defendant's four hundred national offices where the result of initial discovery did not suggest "the existence of a 'national policy'" stemming from defendant's corporate headquarters). Likewise, a plaintiff need not engage in nation-wide discovery to demonstrate the existence of such a policy or practice. *Bates v. Tandy Corp.*, No 03-5519, 2005 WL 1162502 (E.D. Pa. May

17, 2005) (denying plaintiffs' request for nationwide discovery in a putative class action alleging a company-wide practice of employment discrimination and noting that nationwide discovery is not necessary to certify a class).

Although the issue of the scope of discovery is not yet before the Court, we note that Plaintiffs have not shown a need for nationwide discovery to "explore the national scope of Defendant's wrongdoing" or to explore "the liability issues." *See Tracy,* 185 F.R.D. at 306, 309 (denying nationwide discovery where plaintiffs' discovery efforts failed to demonstrate a "reasonable likelihood that the discrete events [alleged to have happened to the plaintiffs] have been caused or prompted by directions in some form from national headquarters."). All they have done is point to statements made by the *Vasquez* plaintiffs—store team leaders who were fired for engaging in gainsharing violations for their own benefit—to support their opposition to a Section 1292(b) certification request relating to the threshold issue of personal jurisdiction. *See* Second Am. Compl. at ¶ 31 ("As alleged in the lawsuit filed by the store managers, the illicit practice was nationwide…"). In sum, the discovery "necessary no matter the result of any interlocutory appeal", *see* Resp. at 12, is substantially different from what Plaintiffs would like to believe.[8]  *See Tracy*, 185 F.R.D. at 306, 309; *Severtson v, Phillips Beverage Co*., 137 F.R.D. 264, 267 (D. Minn. 1991) (before nationwide discovery is allowed, plaintiffs must demonstrate "some factual basis for plaintiffs' claims of class-wide discrimination"); *see also Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) (the plaintiff "bears the burden of advancing a

---

[8] For example, Plaintiffs' initial discovery can be limited to the nine stores identified in the *Vasquez* suit (which encompass all of the stores at issue in this action and which Whole Foods submits should be coordinated with this action for purposes of discovery), to try to demonstrate a reasonable likelihood that any gainsharing violations that occurred in those stores were the result of a nationwide policy or directive. If such information is uncovered, and if the D.C. Circuit determines that *Bristol-Myers* does not apply to class actions, Plaintiffs can then seek to expand their discovery, as guided by the Court. Whole Foods will discuss its view of the appropriate scope of discovery as part of the Rule 26 conference.

prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied, or that discovery is likely to produce substantiation of the class allegations.").

Finally, Plaintiffs' Response fails to consider the many ways in which resolution of this controlling question of law might advance the termination of the suit. As Whole Foods argues— and this Court, itself, seemed to portend—a failure to apply *Bristol-Myers* to this case might require "analy[sis of] every discovery dispute, deposition request, and motion [ ] through the prism of 43 separate state laws." *See* Motion at 3; *see also* Appealed Order [Dkt. 34] at 14. Given this possibility, the benefits of litigating over the laws of three states (including those involved in the *Vasquez* matter) rather than as many as forty-three, are obvious. *See American Geophysical Union v. Texaco, Inc.,* 802 F. Supp. 1, 29-30 (S.D.N.Y. 1992) (certifying question for interlocutory appeal where "the decisions of the Supreme Court on fair use have not formulated a clear framework or standard governing future cases" and where a successful appeal would avoid "voluminous unnecessary litigation of the claims of 84 plaintiffs"); *see also Johnson v. Wash. Metro. Area Transit Author.,* 790 F. Supp. 1174, 1180 (D.D.C. 1991) (certifying question for interlocutory appeal where case law on a threshold question was "confused" and its resolution stood to spare the parties the expense of further litigation).

Curtailing not only the number of state laws to be applied, but the number of litigants and stores involved would also result in "the amount of discovery and corresponding district court time [being] reduced dramatically." *See Chan v. City of New York*, 803 F. Supp. 710, 713 (S.D.N.Y. 1992); *see also id.* at 733 (certifying issue of whether certain claims should have been dismissed under 12(b)(6) for interlocutory appeal and noting that a reduction of the number of claims and class plaintiffs would eliminate a "significant amount of discovery"). Given the palpable difference between a case involving nine stores within the same metropolitan region

and one involving over four-hundred-fifty stores across the country, Plaintiffs' argument that an interlocutory appeal would "serve only to impose a wasteful and needless delay on discovery that will need to be conducted anyway", *see* Resp. at 12, must fail.

## CONCLUSION

For these reasons and those presented in Defendant's Motion, the Court should certify for interlocutory appeal its ruling that *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017) does not apply to nationwide class actions.

Dated: May 4, 2018

Respectfully Submitted,

**GREENBERG TRAURIG, LLP**

By: */s/ Gregory J. Casas*
Gregory J. Casas
Bar No. 455329
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone:  512.320.7200
Facsimile:  512.320.7210

David Sellinger
Bar No. 282780
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Telephone:  973.360.7900
Facsimile:  973.301.8410

John H. Hempfling, II (*pro hac vice*)
550 Bowie Street
Austin, TX 78703
Telephone:  512.542.0213
Facsimile:  512.482.7213

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was electronically filed with the Court and that counsel of record, who are deemed to have consented to electronic service are being served this 4th day of May, 2018, via the Court's CM/ECF System.

*/s/ Gregory J. Casas*
*Gregory J. Casas*

*AUS 536758218v6*