# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
)
MICHAEL MOLOCK, et al., )
)
    Plaintiffs, )
)
    v. )     Case No. 16-cv-02483 (APM)
)
WHOLE FOODS MARKET GROUP, INC., )
)
    Defendant. )
_____)

## MEMORANDUM OPINION

    This putative class action arises from a controversy surrounding a profit-sharing plan implemented by Defendant Whole Foods Market Group, Inc. ("WFMG"), known as the "Gainsharing program," which awarded bonuses to Whole Foods store employees whose departments came in under budget. Pls.' Second Am. Compl., ECF No. 28, ¶ 15. Plaintiffs, who are current and former employees of WFMG, allege that WFMG abused the Gainsharing program on a nationwide scale by "shifting labor costs" to store departments that were underperforming, thus reducing or negating the bonuses that would have been owed to employees in an over-performing department. *Id.* ¶ 18. Plaintiffs' claims arise solely under District of Columbia or state law.

    On March 15, 2018, this court granted in part and denied in part Defendant's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint. *See* Mem. Op. & Order, ECF No. 34. As relevant to the instant motion, the court rejected Defendant's assertion that the Supreme Court's recent decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017), required dismissal of the claims of unnamed putative class members who reside

outside of the District of Columbia for lack of personal jurisdiction. In *Bristol-Myers Squibb*, the Supreme Court held, in the context of a mass tort action, that the Due Process Clause of the Fourteenth Amendment did not permit a California state court to exercise specific jurisdiction over the tort claims of nonresident plaintiffs. *See id.* at 1781–82. WFMG now urges this court to certify its March 15, 2018 order for interlocutory appeal under 28 U.S.C. § 1292(b) to allow the D.C. Circuit to weigh in on whether the jurisdictional limits proscribed in *Bristol-Myers Squibb* extend to unnamed, nonresident members of a putative nationwide class in federal court. *See* Def.'s Mot. to Certify for Interlocutory Appeal, ECF No. 37; Def.'s Mem. in Supp., ECF No. 37-1 [hereinafter Def.'s Mem.]. Plaintiffs oppose certification. *See* Pls.' Mem. in Opp'n, ECF No. 38 [hereinafter Pls.' Mem.].

For the reasons discussed below, the court finds that "[a]n immediate appeal would conserve judicial resources and spare the parties from possibly needless expense if it should turn out that this Court's ruling[ ] [is] reversed." *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 100 (D.D.C. 2003). Accordingly, Defendant's motion to certify is granted.

I.

Under 28 U.S.C. § 1292(b), the certification of an order for interlocutory appeal is appropriate when "(1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion concerning the ruling exists; and (3) an immediate appeal would materially advance the litigation." *APCC Servs.*, 297 F. Supp. 2d at 95. The party seeking interlocutory review "bears the burden of showing that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgement." *Virtual Def. & Dev. Int'l Inc. v. Republic of Moldova*, 133 F. Supp. 2d 9, 22 (D.D.C. 2001) (internal quotation marks omitted). Given the "strong congressional policy against piecemeal reviews, and against

obstructing or impeding an ongoing judicial proceeding by interlocutory appeals," certification is only appropriate in the court's discretion and upon satisfaction of the elements of section 1292(b). *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 233 F. Supp. 2d 16, 20 (D.D.C. 2002) (quoting *United States v. Nixon*, 418 U.S. 683, 690 (1974)). The issue WFMG seeks to certify satisfies all three elements.

A.

As to the first element—whether the order involves a "controlling question of law"—there is no genuine dispute. *See* 28 U.S.C. § 1292(b). Indeed, Plaintiffs offer no argument to the contrary. *See* Pls.' Mem. at 5–12. A controlling question of law is "one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources." *Judicial Watch*, 233 F. Supp. 2d at 19 (quoting *In re Vitamins Antitrust Litigation*, Civ. A. No. 99-197, 2000 WL 673936, at *2 (D.D.C. Jan. 27, 2000). "The resolution of an issue need not necessarily terminate an action in order to be controlling, but instead may involve a procedural determination that may significantly impact the action." *APCC Servs.*, 297 F. Supp. 2d. at 96 (internal quotations and citation omitted).

Here, whether *Bristol-Myers Squibb* applies to claims of unnamed, nationwide putative class members in a federal court is a threshold jurisdictional question. If this court's decision is correct, the court may exercise specific jurisdiction over the claims of thousands of unnamed, nonresident putative class members. On the other hand, if the court is wrong and it lacks specific jurisdiction over such claims, this court could not entertain a nationwide class action and the most Plaintiffs could seek to certify is a District of Columbia class. The difference in scope of these two scenarios need not be belabored. Quite obviously, a nationwide class action would place far greater demands on this court and Defendant than would a case that goes forward with only a

3

geographically limited class. For that reason, the order from which Defendant seeks interlocutory review involves a "controlling question of law."

B.

The court also is satisfied that the second element—that there exist a substantial ground for difference of opinion—is present in this case. "A substantial ground for difference of opinion is often established by a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits." *APCC Servs.*, 297 F. Supp. 2d at 97. It is not necessarily enough, however, that there are conflicting decisions in other circuits. Instead, a court "must analyze the strength of the arguments in opposition to the challenged ruling to decide whether the issue is truly one on which there is a substantial ground for dispute." *Id.* at 98.

There is no controlling or persuasive precedent in this jurisdiction, and no circuit authority elsewhere, that addresses *Bristol-Myers Squibb*'s application to nationwide class actions in federal courts. There are only district court cases, and among them there is a near even split on the question. Defendant points to nine cases that it characterizes as having reached a different conclusion than this court did. Def.'s Mem. at 6–7 & n.3; Def.'s Ltr. Br., ECF No. 41, at 1–2; *see, e.g.*, *McDonnell v. Nature's Way Prods., LLC*, No. 16-C-5011, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017) (dismissing nonresident putative class members' claims for lack of a connection to the forum).[1] Plaintiffs, on the other hand, identify nine other cases that have gone the other way and are in agreement with this court. Pls.' Mem. at 7 n.2; *see, e.g.*, *Feller v. Transam. Life Ins. Co.*, No. 2:16-cv-01378, 2017 WL 6496803, at *17 (C.D. Cal. Dec. 11, 2017) (recognizing that "there are important differences between mass tort and class actions for the purposes of personal

---

[1] Plaintiffs argue that some of the cases that Defendant cites do not actually support its position or merely address the issue in dicta. Pls.' Mem. at 7; Pls.' Ltr. Br., ECF No. 43, at 1–2. Even if Plaintiffs' reading of these cases is correct, there are still several district court judges who have expressly held that *Bristol-Myers Squibb* extends to nationwide class actions brought in federal court.

4

jurisdiction over defendants" and concluding that *Bristol-Myers Squibb*'s reasoning "does not reach so far as to bar the nonresident unnamed class members"). In light of these numbers, there can be no dispute, as one court has put it, that the question "whether *Bristol-Myers* extends to class actions is a question that has divided courts across the country." *Chavez v. Church & Dwight Co.*, No. 17-C-1948, 2018 WL 2238191, at *10 (N.D. Ill. May 16, 2018).[2]

This court's task is not, however, to "keep score" and determine which side has more decisions in its favor, but instead is to analyze the reasoning in those decisions and the "strength of the arguments in opposition" in order to decide whether there is a substantial ground for dispute. *APCC Servs.*, 295 F. Supp. 2d at 98. And here there is. The cases holding that *Bristol-Myers Squibb* applies to claims of nationwide class members are well-reasoned and do not lack persuasive power. In brief, those courts that have taken an opposing view have highlighted the Supreme Court's holding in *Bristol-Myers Squibb* that due process requires there be some relationship between the defendant and the plaintiff's claim to the forum state to establish specific jurisdiction. *See, e.g.*, *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, No. 14-C-2032, 2018 WL 1255021, at *15–17 (N.D. Ill. Mar. 12, 2018); *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 873–75 (N.D. Ill. 2017). They also have emphasized the Supreme Court's conclusion that even the presence of similar claims from resident plaintiffs is not enough to satisfy due process. *See id.* These jurisdictional limitations, although made in the context of a mass tort action in state court, have obvious parallels to the nationwide class action in federal court. Moreover, some courts have responded to the concern that extending *Bristol-Myers Squibb* to class actions would gut Rule 23. They have reasoned that Rule 23 cannot grant jurisdiction where the due process clause does not

---

[2] Plaintiffs attempt to downplay the division by pointing out (correctly) that most of the district courts that reached a decision different than this court come from one district—the Northern District of Illinois. *See* Pls.' Mem. at 7; Pls.' Ltr. Br., ECF No. 43, at 3. However, that fact does not, for the reasons explained below, diminish the strength of the rationale that those courts have advanced in reaching a different conclusion.

5

allow it, citing the Supreme Court's statement in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997), that "Rule 23's class action requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, [28 U.S.C. § 2072(b)] which instructs that the federal court rules of procedure shall not abridge, enlarge, or modify any substantive right." *See Practice Mgmt. Support Servs.*, 2018 WL 1255021, at *16 (alterations and internal quotation marks omitted); *see also In re Dental Supplies Antitrust Litigat.*, No. 16-Civ-696, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) ("The constitutional requirements of due process do[ ] not wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due process just the same as any other case."). These are not insubstantial arguments. And reasonable jurists can, and have, disagreed about them.

Although this court remains unpersuaded by these contrary interpretations of *Bristol-Myers Squibb*, it does not find the reasoning employed in those cases to be lacking merit, leading this court to conclude that there is a "substantial ground for a difference of opinion" on the issue. *See* 28 U.S.C. § 1292(b).

C.

Finally, this court must address whether an immediate appeal of its order will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). To satisfy this element a movant need not show that a reversal on appeal would actually end the litigation. Instead, the relevant inquiry is whether reversal would hasten or at least simplify the litigation in some material way, such as by significantly narrowing the issues, conserving judicial resources, or saving the parties from needless expense. *See APCC Servs.*, 297 F. Supp. 2d at 100 (noting that an immediate appeal would materially advance the ultimate termination of the litigation as it had the potential to save the parties from protracted litigation and massive discovery costs); *cf. U.S. House of*

6

*Representatives v. Burwell*, No. 14-1967, 2015 WL 13699275, at *1 (D.D.C. Oct. 19, 2015) (denying a motion for interlocutory appeal because reversal of the court's order would not shorten the length of the litigation since the case could be decided in "a matter of months" regardless).

Discovery in this case, in its present form, promises to be drawn out, complex, and expensive. At the hearing on this matter, Plaintiffs' counsel conceded that, in order to establish a class consisting of current and former WFMG employees, and presumably to determine damages, he might demand more than a decade's worth of payroll records from well over two hundred Whole Foods grocery stores operated by WFMG. *See* Jt. Initial Scheduling Conf. Hr'g Tr. (draft), June 1, 2018, at 25–27. Furthermore, counsel stated that it is his belief that the Gainsharing program abuse goes beyond WFMG and infects other Whole Foods operating companies. *Id.* at 25–26. WFMG is one of multiple companies that operate Whole Foods grocery stores throughout the country. WFMG's stores are located primarily on the eastern seaboard. *Id.* at 11–12. Plaintiffs' counsel intends to take discovery that will show that abuse of the Gainsharing program was sanctioned at the highest corporate levels and was commonplace throughout the country. If Plaintiffs can make such a showing, counsel explained, they intend to amend the complaint to add the other operating companies, so that Plaintiffs can certify a true nationwide class that covers the current and former employees of every Whole Foods store in the country. *See id.* at 22–23. There are nearly 500 such stores. *Id.* at 13. Thus, if Plaintiffs succeed in their plan, they will ask for discovery concerning nearly 500 Whole Foods grocery stores and the thousands of people employed in those stores. The potential time and expense of obtaining such discovery is staggering.

On the other hand, if the court is wrong about *Bristol-Myers Squibb*, this case becomes simpler and discovery far more manageable. Plaintiffs could not certify in this district court a class

7

of all WFMG employees, let alone a true nationwide class. At most, Plaintiffs would be able to certify a District of Columbia class, consisting of employees who worked in the District's five Whole Foods stores operated by WFMG. In addition, if a nationwide class action cannot be brought here, the court will not face the potential of grappling with the laws of the 43 states in which Whole Foods does business. The court would rather avoid such a morass if it is in fact wrong about *Bristol-Myers Squibb*'s application in this matter.

Accordingly, given the potential of avoiding burdensome discovery costs and conserving judicial resources in the event of a reversal, this court finds that certifying its prior order for interlocutory appeal will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

## II.

Before concluding, the court notes that litigation will not cease pending resolution of the interlocutory appeal. Section 1292(b) provides "[t]hat application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b). As described further in the Scheduling Order filed herewith, pending resolution of the interlocutory appeal, the court stays all discovery with respect to certification of a nationwide class. The case shall, however, proceed with respect to all Whole Foods stores operated by WFMG in the District of Columbia, Maryland,[3] and any other store at which a plaintiff in the closely related case of *Vasquez v. Whole Foods Market Services, Inc.*, 17-cv-00112-APM (D.D.C.), was employed.

---

[3] The court did not dismiss Plaintiffs' claims under Maryland law; therefore, discovery as to those stores will be permitted to go forward. However, if the D.C. Circuit were to disagree with this court on the application of *Bristol-Myers Squibb*, this court may not have personal jurisdiction over a Maryland sub-class.

8

III.

Accordingly, for the reasons stated above, the court grants Defendant's Motion to Certify for Interlocutory Appeal, ECF No. 37. A separate Order accompanies this Memorandum Opinion.

Dated: June 11, 2018

Amit P. Mehta
United States District Judge